## A94A1973. MNM 5, INC. v. ANDERSON/6438 NORTHEAST PARTNERS, LTD.
(451 SE2d 788)

BIRDSONG, Presiding Judge.

Anderson/6438 Northeast Partners, Ltd. leased certain premises off Interstate 85 in Atlanta to MNM 5, Inc. d/b/a Mattress & More, commencing April 1, 1993. A large number of disputes immediately arose. Another tenant complained that MNM 5 was parking its delivery truck so as to obscure the road view of that tenant's store; the landlord and the other tenants agreed what were "designated areas" for parking but according to an affidavit by MNM 5's president Amjad W. Agha, MNM 5 decided the spaces in front of the stores were the "designated area" for parking; the landlord towed MNM 5's delivery truck more than once; MNM 5 asserted a right to place mattresses in front of its store; there were disputes over renovations and a sign; MNM 5 did not provide a certificate of insurance; and appellee

had to give notice of nonpayment of rent.

Anderson/6438 filed this dispossessory action in Gwinnett County on October 8, 1993. MNM 5 counterclaimed for damages for malicious interference, breach of contract, economic harm, trespass, breach of implied covenant of quiet enjoyment, and punitive damages not less than $1,000,000.

MNM 5 then filed a motion to dismiss contending that a suit MNM 5 filed against Anderson/6438 in Fulton County on September 17, 1993 is a prior pending action and should abate this dispossessory action. According to MNM 5, that suit alleges the same causes of actions as are alleged in this suit. Anderson/6438 filed a motion for summary judgment on its dispossessory claim. By order of January 20, 1994, the trial court denied MNM 5's plea in abatement. The hearing on appellee's motion for summary judgment was held February 14, 1994, and on February 15, 1994, the trial court granted judgment to Anderson/6438 on its dispossessory claim. MNM 5 filed a notice of appeal on March 9, 1994.

MNM 5 contends the trial court erred in denying MNM 5's plea in abatement and in finding no issues of fact as to whether an effective tender of the $5,500 security deposit was made by MNM 5 and accepted by appellee, and as to other claims by MNM 5. *Held*:

1. The trial court's denial of MNM 5's motion to dismiss and plea in abatement was not a final judgment and was subject to interlocutory appeal. OCGA § 5-6-34 (b); see *Atlanta Airmotive v. Newnan-Coweta Airport Auth.*, 208 Ga. App. 906 (432 SE2d 571). If meritorious, appellant's plea would have abated these proceedings under OCGA § 9-2-44 (a); but instead of appealing the denial of its plea, MNM 5 let this dispossessory suit go to judgment, and now seeks to have that judgment overturned on the basis of a prior pending action.

When a direct appeal is properly taken from a judgment we must address all rulings which may affect the proceedings, but we are not required to address moot issues. OCGA § 5-6-34 (d). Even assuming these proceedings would properly have been abated for a prior pending action under such cases as *Schoen v. Home Fed. Savings &c. Assn.*, 154 Ga. App. 68, 69 (267 SE2d 466) and *Atlanta Airmotive*, supra, it is too late to assert the plea now. The law of abatement for prior pending action is based on the doctrine that *no one should be twice harassed for one and the same cause* (*Schoen*, supra at 69; *Atlanta Airmotive*, supra); where a suit has gone to judgment without a final adjudication on a plea of abatement, the point of abatement is lost. Moreover, the judgment becomes the law of the case and if the judgment is upheld, prior ancillary rulings cannot be reviewed. See *Bennett v. Caton*, 154 Ga. App. 515, 517 (268 SE2d 786). Particularly with a denial of a plea in abatement for prior pending action, which

the losing party did not seek to appeal so as to abate the later case and prevent himself from being "twice harassed," we will not overturn a judgment against that party so that he can "twice harass" the winning party.

MNM 5 contends that after appellee moved for summary judgment on its dispossessory claim, MNM 5 "reasserted its plea in abatement." But by going forward on the hearing on appellee's motion for summary judgment on the dispossessory issue, MNM 5 embarked on a hearing on the merits of what it says is that "one and the same cause" for which abatement was denied, in an order which it did not seek to appeal. Even if the trial court could reconsider its ruling on the plea of abatement at the hearing on motion for summary judgment on the merits of the case (but see *Williams-East v. Weeks*, 156 Ga. App. 861 (1) (275 SE2d 801)), MNM 5 will not be heard to complain that the trial court then proceeded with the case, for by making no effort to appeal the first denial of its plea in abatement, MNM 5 facilitated the hearing on the merits. MNM 5 slept on its right to seek appeal of the denial of its plea in abatement, so MNM 5 has only itself to blame that these proceedings went forward. The question of abatement became moot when the proceedings moved to a judgment which we affirm.

Moreover, the transcript of the summary judgment hearing shows the plea was in fact not reasserted or reconsidered at that hearing.

2. The trial court did not make the specific ruling alleged by appellant, but granted summary judgment without giving its reasons. If the grant is right for any reason, it will be affirmed. *Albany Oil Mill v. Sumter EMC*, 212 Ga. App. 242 (3) (441 SE2d 524). The grant of summary judgment on appellee's dispossessory claim is correct. There is no material issue of fact that appellant was in default for failing to pay the security deposit.

The lease required MNM 5, on or before April 1, 1993, to pay a security deposit of $5,500 to be held by landlord "into a regular business checking account, without liability for interest and as security for the performance by tenant of tenant's covenants and obligations under this lease, it being expressly understood that such deposit shall not be considered an advance payment of rent or a measure of landlord's damages in case of default by tenant." The record and transcript of the summary judgment hearing show that MNM 5 did not pay the security deposit on April 1, 1993. On June 17, 1993, appellee sent a certified letter naming several defaults including failure to respond to a demand for a security deposit. This default was not cured within five days as required by the lease. On July 8, 1993, MNM 5's agent sent appellee's attorney a letter stating several contentions as to various ongoing disputes and enclosing a check for the security deposit in the amount of $5,500 "to hold in escrow until we present you

with bills from the contractor we select and the landlord approves . . . the work on the premises."

The lease requires an unconditional tender of the security deposit. A tender of money in payment of a debt must be equivalent to performance, certain and unconditional. See *Smith v. Bank of Acworth*, 218 Ga. 643 (129 SE2d 857). Appellant's tender of a check to be held in escrow until it submitted bills for improvements which appellee approved, is evidently based on a lease provision that if tenant improved the premises as detailed in another provision, landlord would reimburse tenant for up to $5,500. But that provision could not take effect, and there could be no "reimbursement" by appellee, unless and until the security deposit had been paid, and it was never paid or tendered. A party may by his conduct waive a legal right but where the only evidence of an intention to waive is what a party does or forbears to do, there is no waiver unless his acts or omissions to act are so manifestly consistent with an intent to relinquish a then-known particular right or benefit that no other reasonable explanation of his conduct is possible. *Marsh v. Wright Mem. Mortuary*, 197 Ga. App. 736 (399 SE2d 232); *Jones v. Roberts Marble Co.*, 90 Ga. App. 830 (2) (84 SE2d 469). The lease does not provide that the landlord's failure to make demand on April 1, 1993 or on default waives the right to declare default. The notion that the landlord intended to waive its right to demand the security deposit is not the "only reasonable explanation" (id.) of its forbearance to demand payment on April 1, 1993. No unconditional tender of the security deposit was made, and the fact that the landlord did not immediately return the check did not amount to acceptance of it as payment of the security deposit. At best the requirement to pay a security deposit was suspended by the landlord's indulgence, and the landlord gave reasonable notice of its intention to rely on the lease terms. OCGA § 13-4-4.

3. Summary judgment being correct for MNM 5's default in paying the security deposit, we need not consider the remaining enumerations of error. *Albany Oil Mill*, supra. However, with regard to those issues, we find it in the interests of judicial economy to note that MNM 5's dispute as to its right to the parking spaces is without bona fide controversy. OCGA § 9-15-14. The lease provides tenant may park one truck "in the designated parking area"; MNM 5 decided "designated parking area" meant any space MNM 5 designated. In common understanding a commercial landlord has the right to "designate" parking spaces unless the lease expressly provides otherwise. Further, there is no bona fide controversy whether MNM 5's conditional tender of $5,500 complied with the unconditional requirement to pay the security deposit. See OCGA § 9-15-14. Further, the 796-page record in this dispossessory action shows MNM 5's failure to pay the security deposit on demand and its pretense of paying the

deposit while placing conditions on its tender which would hold the landlord hostage to approve whatever MNM 5 chose to do, may indicate such bad faith in its performance of the lease from its inception on April 1, 1993 and such contentiousness and litigiousness by MNM 5 as to bring into question the design with which it entered the lease. See OCGA §§ 13-6-11; 51-7-80. Further, by its own default in failing to make an unconditional tender of the security deposit even after notice of default, MNM 5 deprived itself of any right in the premises and any hope of economic benefit therefrom. Upon its failure to cure default within five days after notice on June 17, 1993, MNM 5 had no more right in the premises and disputes such as the disputes about a monument sign, parking rights, and the right to put mattresses outside the store became moot, if not pointless contentiousness.

*Judgment affirmed. Blackburn and Ruffin, JJ., concur.*

DECIDED OCTOBER 31, 1994 —
RECONSIDERATION DENIED DECEMBER 2, 1994 —

*Slutzky, Wolfe & Bailey, Ray S. Smith III, Brookins & Cook, O. Jackson Cook, Gray, Gilliland & Gold, Charles Ratz*, for appellant.

*Stribling, Cunningham, Newlin & Porter, John C. Porter, Jr., Lori S. D'Alessio, Warren N. Sams III, Thomas E. McCarter*, for appellee.