A97A0735. FRANK et al. v. FLEET FINANCE, INC. OF GEORGIA.
(489 SE2d 523)

RUFFIN, Judge.

Fleet Finance, Inc. of Georgia ("Fleet Finance") filed a dispossessory action in magistrate court, alleging that John and Connie Frank are tenants at sufferance on property it owns in Henry County, Georgia ("the property"). The magistrate court issued a Writ of Possession to Fleet Finance, and the Franks appealed to the superior court. During the appeal, the Franks amended their answer to assert a counterclaim for specific performance of a residential real estate sales contract. Both parties moved for summary judgment. After a hearing, the trial court granted summary judgment to Fleet Finance and denied the Franks' motion. The Franks now appeal, and for reasons which follow, we affirm in part and reverse in part.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). The record shows that in January 1988, the Franks purchased the property with financing from Griffin Federal Savings Bank. On October 26, 1990, the Franks obtained a second mortgage on the property from Mortgage Lenders, Inc., which transferred and assigned its promissory note and deed to secure debt on the property to Fleet Finance five days later. Griffin Federal Savings Bank subsequently foreclosed, and Fleet Finance purchased the property at the foreclosure sale held on January 5, 1993.

John Frank testified that after the foreclosure sale, Ron Hodges from Fleet Finance contacted him "to give [him] a way that [he] could keep [his] house." According to Mr. Frank, Hodges suggested that they "go into a contract where [Mr. Frank would] put down five percent and that [Fleet Finance] would then finance it for thirty years with a ten year balloon at a ten or ten and a half percent rate, something in that range. [Hodges] said all [Mr. Frank] had to do was just

come up with the five percent."

On May 7, 1993, the Franks entered into a purchase and sale contract with Fleet Finance. Pursuant to that contract, Fleet Finance agreed to sell the property to the Franks under the following terms: "The purchase price of [the property] shall be: One hundred ninety two thousand DOLLARS ($192,000.00) to be paid as follows: $10,000 down and Fleet to hold a 1st [mortgage] for remainder at 10.5% for 30 [years] with a balloon on the 120th payment." The contract further provided that "[t]he date of closing shall be on or before 5/31/93 unless both parties agree in writing to extend the time of closing. Time is of the essence." The record shows that the sale did not close on May 31, 1993, as planned. According to Mr. Frank, he and Hodges agreed to extend the closing date and Hodges told him it was " 'not necessary to change the date on the contract.' "

Fleet Finance presented evidence that on or about June 6, 1993, it prepared and submitted a loan application for the Franks, which it rejected two days later. The Franks, however, deny that they filled out a loan application and contend that when they signed the purchase contract, Hodges stated that they did not need further approval for a loan with Fleet Finance. We note that the loan application appearing in the record is not signed by the Franks.

Mr. Frank testified that after the sale failed to close on May 31, 1993, he wrote numerous letters to Fleet Finance in an effort to obtain another closing date, but received no response. In October 1993, Mr. Frank delivered a cashier's check for $10,000 to the Fleet Finance offices. As described by Mr. Frank, he "was ready to close and [he] wanted to make sure everything was going to be fine to close. [He] gave that money to speed up the process." Fleet Finance placed the money in an escrow account.

In March 1994, Fleet Finance sent a $10,000 check drawn from its own account to the Franks via certified mail. The Franks never claimed the check from the post office, which returned the funds to Fleet Finance. While meeting with Mr. Frank in March 1995, a Fleet Finance representative again attempted to return the money. Mr. Frank took the $10,000 check from the representative and gave it to his attorney, who sent it to Fleet Finance's attorney.

According to the Franks, Fleet Finance ultimately informed them that it would not honor the sale contract and that they needed to obtain approved financing from another source to purchase the property. One individual who worked with the Franks at Fleet Finance testified that the contract was not valid for two reasons: "One, because the contract has expired as of May 31st, 1993, and number 2, because Mr. Frank was denied his loan with Fleet Finance."

Ruling on the parties' motions for summary judgment, the trial

court determined that "[t]he contract for sale ended on May 31, 1993, when both [Fleet Finance] and [the Franks] could not close. This Court reluctantly finds that no title passed at the signing of the contract and [the Franks] have maintained the position of tenant since the expiration of the contract." The trial court further denied the Franks' claim for specific performance of the contract and granted Fleet Finance a Writ of Possession.

1. In their first two enumerations of error, the Franks argue that the trial court erred in granting Fleet Finance's motion for summary judgment. In particular, the Franks contend that the trial court improperly found that (1) the sales contract terminated on May 31, 1993; (2) the Franks failed to meet the conditions for closing under the contract; and (3) the Franks were tenants on the property.

(a) We agree that the trial court erred in granting summary judgment to Fleet Finance on the contract termination issue. The trial court determined, and Fleet Finance argues, that the contract terminated as a matter of law on May 31, 1993, when the parties failed to close or extend the specified closing date in writing. We find, however, that a fact question remains as to whether the parties waived the closing deadline.

As noted above, the sale contract provided that "[t]he date of closing shall be on or before 5/31/93 unless both parties agree in writing to extend the time of closing. Time is of the essence." This provision, including the "time is of the essence" clause, may be waived, and conduct before *or* after the closing date may show waiver. *McCullough v. McCullough*, 263 Ga. 794, 795 (1) (439 SE2d 486) (1994); *Edwards v. McTyre*, 246 Ga. 302, 303 (3) (271 SE2d 205) (1980). "It has been held by [our Supreme Court] many times that if time is of the essence of a contract, it may be waived; and that subsequent conduct of the obligor may have that effect. [Cits.]" *Bolton v. Barber*, 233 Ga. 646, 648 (2) (212 SE2d 766) (1975). Thus, "[w]hile the contract in the present case provided that no modification of [the closing deadline] could be made except by written agreement, . . . this would not prevent a subsequent waiver of the time of performance by the conduct of the sellers." Id.

The evidence in the record raises a question of material fact regarding waiver. According to Mr. Frank, Hodges stated that they were not bound by the May 31, 1993 closing date and that it was "not necessary to change the date on the contract." The record further shows that Fleet Finance prepared, processed, and denied a loan application for the Franks in June 1993, raising an inference that Fleet Finance did not view the contract as void after May 31, 1993. In addition, Fleet Finance accepted and deposited Mr. Frank's $10,000 check in October 1993, well after the closing date.

"A seller should not, after the time for closing a sale, act in such a

manner as to lead the buyer to believe that the time for closing will not be insisted upon." *Bolton*, supra. We find that a question of fact remains as to whether the parties waived the time restriction for closing the sale. Accordingly, the trial court erred in finding that, as a matter of law, "[t]he contract for sale ended on May 31, 1993, when both [Fleet Finance] and [the Franks] could not close."

(b) The trial court also erred to the extent it granted Fleet Finance summary judgment based on the Franks' failure (1) to tender $192,000 in cash as a prerequisite for closing, or (2) to obtain financing approval for the purchase money loan.

Both parties concede on appeal that the contract is "plain and unambiguous." Given this stipulation, we will not address this issue further and will abide by the following principles. "Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Such a contract is the only evidence of what the parties intended and understood by it." (Citations and punctuation omitted.) *Paige v. Jurgensen*, 204 Ga. App. 524, 525 (1) (419 SE2d 722) (1992). "[P]arol evidence [is not] admissible to contradict or construe an unambiguous contract. [Cit.]" *Petroziello v. U. S. Leasing Corp. &c.*, 176 Ga. App. 858, 861 (338 SE2d 63) (1985).

In a subsection entitled "PURCHASE PRICE AND METHOD OF PAYMENT," the parties agreed that "[t]he purchase price of [the property] shall be: One hundred ninety two thousand DOLLARS ($192,000.00) to be paid as follows: $10,000 down and Fleet to hold a 1st [mortgage] for remainder at 10.5% for 30 [years] with a balloon on the 120th payment." Professing to draw this Court's attention to "the *actual terms and language* utilized by the parties to [the] sale contract," (emphasis in original), Fleet Finance argues on appeal that "[b]ased upon the clear and unambiguous terms of the Sale Contract, the Franks were required to tender at closing $192,000.00 to Fleet Finance, said sum representing the purchase price of the property." Fleet Finance further contends that, pursuant to the contract, the Franks were required to obtain an approved mortgage loan to finance the purchase price, but failed to do so.

Even a cursory reading of the contract, however, completely undermines Fleet Finance's arguments. The contract does not, in any way, require the Franks to present Fleet Finance with $192,000 in cash on the day of closing. Rather, the contract clearly anticipates a $10,000 downpayment, with the balance to be financed by Fleet Finance as a first mortgage pursuant to the stated terms. Similarly, the clear and unambiguous terms of the contract do not require the Franks to obtain approved financing before the closing. The contract itself obligates Fleet Finance to issue a first mortgage to the Franks, again, pursuant to the stated terms. Further loan qualification or

approval is not contemplated by the contract terms.

Fleet Finance's effort to alter the contract terms with citation to testimony about what it actually intended fails. Fleet Finance cannot argue that the contract terms are "plain and unambiguous" on the one hand, but urge this Court to consider parol evidence on the other. Accordingly, to the extent the trial court granted Fleet Finance summary judgment based upon the Franks' failure to tender $192,000 prior to closing or to obtain approved financing, it erred. The contract does not impose such requirements.

(c) The Franks also argue that the trial court erroneously found them to be tenants on the property. According to the Franks, they are "contract vendees or purchasers of real property[,]" rather than tenants, and thus not subject to the summary dispossession procedure authorized by OCGA § 44-7-50 et seq. We agree with the trial court that, at this point, the Franks are tenants.

"As former owners remaining in possession after a foreclosure sale, [the Franks] were tenants at sufferance subject to being dispossessed. [Cit.]" *Cloud v. Ga. Central Credit Union*, 214 Ga. App. 594, 598 (8) (448 SE2d 913) (1994). That the Franks ultimately entered into a sale contract with Fleet Finance does not alter their status. Despite the contract, the Franks have not yet become owners and thus remain tenants. *Hallisy v. Snyder*, 219 Ga. App. 128 (1) (464 SE2d 219) (1995); see also OCGA § 44-7-1 (a) ("[t]he relationship of landlord and tenant is created when the owner of real estate grants to another person, who accepts such grant, the right simply to possess and enjoy the use of such real estate either for a fixed time or at the will of the grantor").

Indisputably at this point, the Franks must be characterized as tenants. We note, however, that if the contract is enforced on remand, the Franks are entitled to possession as owners, and Fleet Finance's dispossessory action must fail. On the other hand, if the factfinder concludes that the contract terminated, Fleet Finance may seek possession. The validity of the contract, therefore, remains the central issue.

2. In their final enumeration of error, the Franks argue that the trial court erred in denying them partial summary judgment on the following issues: "the validity and enforceability of the Sale Contract, the Franks' entitlement to specific performance of the Sale Contract as sought by Count One of their counterclaim, and the right of possession of the Premises as sought by Fleet Finance."

As found in Division 1 (a), a fact question remains as to whether the parties waived the May 31, 1993 closing deadline incorporated in the contract. The Franks argue that by accepting their $10,000 cashier's check, Fleet Finance clearly waived any breach of the contract's closing terms. The record raises at least a question of fact, however,

as to whether Fleet Finance accepted the $10,000 as the required downpayment on the house, or simply followed its customary practice of depositing checks from prospective purchasers into an account so that the funds would not be lost, stolen, or misplaced.

We find that questions of material fact exist as to whether the contract survived the May 31, 1993 closing deadline. Accordingly, the trial court properly denied the Franks' motion for partial summary judgment.

*Judgment affirmed in part and reversed in part. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED JUNE 19, 1997 —
RECONSIDERATION DENIED JULY 24, 1997 —

*Parker & Day, James A. Parker, Vallerina F. Day*, for appellants.
*McCalla, Raymer, Padrick, Cobb, Nichols & Clark, John G. Aldridge, Jr., Daniel D. Phelan*, for appellee.