A01A1612, A01A1613. STRONGHAVEN, INC. v. INGRAM; and vice versa.
(555 SE2d 49)

RUFFIN, Judge.

Wayne Ingram sued his former employer, Stronghaven, Inc. ("Stronghaven"), for breach of his executive stock agreement. After both parties moved for summary judgment, the trial court granted summary judgment to Ingram and denied Stronghaven's motion.

In Case No. A01A1612, Stronghaven appeals these summary judgment rulings. Ingram cross-appeals in Case No. A01A1613, challenging the trial court's failure to include attorney fees and prejudgment interest in his summary judgment award. For reasons that fol-

---

[21] OCGA § 36-62-5 (a).
[22] We note that the Authority is a nonprofit corporation created to benefit the public. OCGA § 36-62-3.

low, we affirm in part and reverse in part Case No. A01A1612, and we dismiss Ingram's cross-appeal as moot.

## Case No. A01A1612

1. In its first enumeration of error, Stronghaven argues that the trial court erred in granting summary judgment to Ingram. Summary judgment is appropriate "when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."[1] We apply a de novo standard of review on appeal and "view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[2]

Viewed in this light, the record shows that Ingram was president of Stronghaven when the parties entered into an executive stock agreement on November 22, 1996. That agreement included a stock repurchase option, which allowed Stronghaven to repurchase Ingram's company stock if his employment with Stronghaven ceased. As provided by the option:

> [Stronghaven] may elect to purchase all or any portion of the Available Securities by delivering written notice (the "Repurchase Notice") to the holder or holders of the Available Securities . . . within 90 days after the [employment] Termination. The Repurchase Notice will set forth the number of Available Securities to be acquired from each holder thereof, the aggregate consideration to be paid for such securities and the time and place for the closing of such purchase.[3]

In the option clause, the parties stipulated that the closing would take place no more than 30 days from delivery of the Repurchase Notice, on a date designated by Stronghaven. They further agreed that Stronghaven would "receive customary representations and warranties as to ownership, title, authority to sell and the like from the sellers of the Available Securities regarding such sale . . . and . . . such other evidence as may reasonably be necessary to affect [sic] the purchase of the Available Securities."

Ingram resigned from Stronghaven on May 28, 1998. In a letter dated August 5, 1998, Stronghaven provided Ingram written notice that it was exercising its repurchase option with respect to 28,732 shares of common stock and 1,006.57 shares of preferred stock, val-

---

[1] *Dover v. Mathis*, 249 Ga. App. 753 (549 SE2d 541) (2001).
[2] Id.
[3] (Emphasis omitted.)

ued at $1,274,987.37. The written notice scheduled the closing date for August 18, 1998. It also stated:

> If you do not plan to attend the Closing in person, please sign the enclosed Assignment Separate From Certificate [forms] and send [them] to [the Chairman of Stronghaven's Board] for receipt on or before August 18, 1998 . . . and the Company will then send you a check in the amount of $1,274,987.37 by overnight courier.

Ingram failed to return the assignment forms needed to complete the repurchase by August 18, 1998, and the closing did not take place. Over six months later, on March 12, 1999, Ingram submitted the signed assignment forms to Stronghaven and in a cover letter demanded $1,274,987.37. The record shows that Stronghaven neither responded to Ingram's demand at that point nor returned the signed assignment forms to him. Instead, it placed the forms and accompanying letter in a company file, without taking further action.

On July 14, 1999, Stronghaven sent Ingram a Notice of Special Meeting of the Shareholders. The notice included a voting proxy, as well as a list of shareholders and their respective shares. The shareholder list indicated that Ingram owned 30,422 shares of Stronghaven common stock, which included the 28,732 common stock shares referenced in Stronghaven's August 5, 1998 Repurchase Notice. According to Ingram, after receiving the Notice of Special Meeting, he informed Stronghaven by letter that he no longer owned the 28,732 shares of common stock, which, in his view, had been repurchased by the company. Stronghaven denied receiving such a letter.

At the ensuing shareholders meeting, Ingram's attorney delivered his proxy to Stronghaven. Through the proxy, Ingram authorized the designated individuals to "vote . . . all of the shares of common stock of Stronghaven, Incorporated held of record [by him]." Stronghaven's counsel recorded at the meeting that Ingram voted 30,422 common stock shares by proxy.

On January 24, 2000, Ingram informed Stronghaven that, by not paying him $1,274,987.37 for his stock, it had violated "its August 5, 1998 exercise of the Repurchase Option." Stronghaven responded that it had no obligation to repurchase the stock because Ingram failed to assign his shares to Stronghaven on or before August 18, 1998.

Ingram subsequently sued Stronghaven, alleging the company breached the executive stock agreement by refusing to pay him for

his stock.[4] The parties filed cross-motions for summary judgment, and the trial court ruled in Ingram's favor, granting his motion and denying Stronghaven's motion.

The trial court found, and both parties agree, that a binding purchase contract arose between the parties when Stronghaven exercised its purchase option.[5] That option specifically required a closing within 30 days after delivery of the Repurchase Notice on a date set by Stronghaven. Ingram does not dispute that he failed to take the steps necessary to permit closing within the specified time period. He admits that he did not fully perform under the contract.[6] Nevertheless, he contends — and the trial court concluded — that by accepting his late-tendered assignment forms and not rescinding the contract, Stronghaven waived timely performance by Ingram as a matter of law.[7] We disagree.

Contractual closing deadlines may be waived, and "conduct before or after the closing date may show waiver."[8] Our Supreme Court has held that " '[w]aiver may be established by expressed statements or implied by acts and conduct from which an intention to waive may reasonably be inferred.' "[9] We have similarly explained:

> Waiver of a contract right may result from a party's conduct showing his election between two inconsistent rights. Acting on the theory that the contract is still in force, as by continuing performance, demanding or urging further performance,

---

[4] Ingram included a conversion claim in his original complaint, but later dismissed that count.

[5] See *Martin v. Schindley*, 264 Ga. 142, 143 (442 SE2d 239) (1994) ("An option becomes a contract between the parties binding from the date of its execution when the option is exercised according to its terms.").

[6] We note that Ingram did not claim on summary judgment or on appeal that time was not of the essence in this contract.

[7] The trial court did not explicitly base its summary judgment ruling on waiver. In its order, however, the trial court found summary judgment proper because Stronghaven "did not reject [Ingram's] tender of the Assignment Forms and . . . never rescinded the exercise of its option." In addition, it relied upon *Pearson v. George*, 209 Ga. 938 (77 SE2d 1) (1953), a case cited by Ingram to support his waiver argument.

[8] (Emphasis omitted.) *Frank v. Fleet Finance &c.*, 227 Ga. App. 543, 545 (1) (a) (489 SE2d 523) (1997). Under the executive stock agreement, North Carolina law applies to "questions concerning the construction, validity and interpretation of [the] Agreement." Ingram asserts, however, that waiver is a procedural issue governed by Georgia law. Stronghaven does not clearly dispute this assertion and primarily cites Georgia waiver law in its brief, while stating that North Carolina law is "consistent." Furthermore, the trial court applied Georgia law to the issues in its summary judgment order. Because Stronghaven has not enumerated the trial court's application of Georgia law as error on appeal, we need not address whether North Carolina waiver law should have been applied. Rather, we consider whether the trial court properly granted summary judgment under Georgia waiver principles. See *Manderson & Assoc. v. Gore*, 193 Ga. App. 723, 725 (2) (389 SE2d 251) (1989).

[9] *TST, Ltd. v. Houston*, 256 Ga. 679-680 (1) (353 SE2d 26) (1987).

or permitting the other party to perform and accepting or retaining benefits under the contract, may constitute waiver of a breach. However, all the attendant facts, taken together, must amount to an intentional relinquishment of a known right, in order that a waiver may exist.[10]

Where the evidence conflicts, the issue of waiver is a factual question for the jury.[11]

We find that a factual dispute remains as to waiver. Ingram argues that Stronghaven's failure to return the stock assignment forms tendered six months after the closing date resulted in waiver as a matter of law. The record shows, however, that although Stronghaven did not explicitly reject Ingram's assignment forms, it simply filed them away. Stronghaven presented evidence that it undertook none of the usual activities associated with purchasing stock shares when it received the assignment forms. The evidence further shows that, as of the July 1999 shareholders meeting, Stronghaven's corporate stock ledger reflected that Ingram owned over 30,000 shares of common stock, including the stock referenced in the August 5, 1998 Repurchase Notice.

Under these circumstances, Stronghaven's mere retention of Ingram's stock assignment forms does not establish, as a matter of law, acceptance of the late tender and waiver of the closing deadline.[12] A jury could find that Stronghaven merely filed the assignment forms without intending to waive the contractual closing period, which expired over six months before Ingram's tender. Thus, the trial court erred in finding that Stronghaven waived the closing deadline as a matter of law.

---

[10] (Punctuation omitted.) *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 257 (3) (381 SE2d 322) (1989). See also *MNM 5, Inc. v. Anderson/6438 Northeast Partners*, 215 Ga. App. 407, 410 (2) (451 SE2d 788) (1994) ("A party may by his conduct waive a legal right but where the only evidence of an intention to waive is what a party does or forbears to do, there is no waiver unless his acts or omissions to act are so manifestly consistent with an intent to relinquish a then-known particular right or benefit that no other reasonable explanation of his conduct is possible.").

[11] *McCullough v. McCullough*, 263 Ga. 794, 795 (1) (439 SE2d 486) (1994); *Kusuma*, supra.

[12] See *Frank*, supra at 547-548 (2) (seller's deposit of down payment check after closing deadline did not establish waiver of deadline as a matter of law; record raised question of fact "as to whether [seller] accepted the [check] as the required downpayment on the house, or simply followed its customary practice of depositing checks from prospective purchasers into an account so that the funds would not be lost, stolen, or misplaced"). See also *American Oil Co. v. Studstill*, 230 Ga. 305 (1) (196 SE2d 847) (1973) ("The tender and delivery of a check in a stated amount in full and complete settlement of a claim, . . . [where] the check, though retained after receipt, is not presented so as to be charged against the deposit or account of the maker, [do] not amount to an accord and satisfaction of the alleged claim as a matter of law.").

The Supreme Court's decision in *Pearson v. George*,[13] cited by both Ingram and the trial court, does not require a different result. In *Pearson*, waiver was clear. The Supreme Court determined that a lessor could not accept untimely rental payments from the lessee, then defend against enforcement of a purchase option in the lease agreement by claiming breach through late payment.[14] As discussed above, the facts do not undisputably establish waiver in this case. Accordingly, the trial court erred in granting summary judgment to Ingram.

2. Although it erred in granting Ingram's motion, the trial court properly denied Stronghaven's request for summary judgment. On appeal, Stronghaven contends that, as a matter of law, its conduct does not show an intent to waive the closing deadline. The record establishes, however, that Stronghaven retained the signed assignment forms Ingram submitted in March 1999. Furthermore, Stronghaven has pointed to no evidence that it responded in any way to Ingram's tender or informed Ingram at that point that the forms were untimely, and thus unacceptable.[15] We find that this evidence raises a factual issue as to whether Stronghaven intended to waive the closing deadline and accept the late-tendered forms.[16] The trial court's denial of Stronghaven's summary judgment motion, therefore, must be affirmed.

### Case No. A01A1613

3. The trial court awarded Ingram judgment in the amount of $1,274,987.37, the price referenced in Stronghaven's August 5, 1998 Repurchase Notice. Through his cross-appeal, Ingram argues that the trial court erred in not including pre-judgment interest or attorney fees in that award. In Division 1, however, we reversed the trial court's award of summary judgment to Ingram. Given that decision, Ingram's cross-appeal is now moot and must be dismissed.[17]

*Judgment affirmed in part and reversed in part in Case No. A01A1612. Appeal dismissed in Case No. A01A1613. Johnson, P. J., and Ellington, J., concur.*

---

[13] Supra.

[14] Id. at 945.

[15] Under Georgia law, failure to respond to a business letter may raise a presumption that the recipient admits "the propriety of the acts mentioned in the letter." OCGA § 24-4-23. We express no opinion as to whether that presumption has been raised in this case.

[16] See *Frank*, supra at 545. See also *American Oil*, supra at 306 (3) ("The tender and retention of the check . . . creates a fact issue with respect to accord and satisfaction where there is no separate written acknowledgment . . . and where the check has not been presented and charged against the deposit or account of the maker.").

[17] See *Steele v. Grot*, 232 Ga. App. 847, 849-850 (2) (503 SE2d 92) (1998).

DECIDED OCTOBER 2, 2001 —
RECONSIDERATION DENIED OCTOBER 23, 2001 —

*Womble, Carlyle, Sandridge & Rice, George W. Long III, Adam S. Katz*, for appellant.

*Edward F. Danowitz, Jr., Kim G. Meyer*, for appellee.