A04A1743, A04A1744. BOLLEA v. WORLD CHAMPIONSHIP WRESTLING, INC. et al.; and vice versa.
(610 SE2d 92)

ANDREWS, Presiding Judge.

Terry Bollea, professionally known as Hulk Hogan and Hollywood Hogan, appeals from the trial court's partial grant of summary judgment to Universal Wrestling Corporation, formerly known as World Championship Wrestling (WCW), and Vince Russo on Bollea's claims for defamation and false light invasion of privacy. WCW cross-appeals from the trial court's denial of its motion for summary judgment on Bollea's claim for breach of contract and its counterclaim for breach of contract. For the following reasons, we affirm.

This case arose after a July 9, 2000 pay-per-view event called the Bash at the Beach. At this event, Bollea, appearing as Hulk Hogan, was to wrestle Jeff Jarrett, who at that time was the world heavyweight champion at WCW. Before the event, Bollea met with Vince Russo, the creative director at WCW to discuss the "script" for the match. Russo also appeared as an on-air talent under his own name, playing the part of a member of WCW management. At the time of the July 9 event, the story line was that there was tension between Hogan and Russo's character. Russo's character favored a group of wrestlers known as the New Blood, who wanted to replace the older established wrestlers known as the Millionaire's Club. Hogan was a member of the Millionaire's Club.

Bollea acknowledged at his deposition that the Hogan and Russo characters were supposed to hate each other. In discussing the script for the Hogan-Jarrett match, it was decided that instead of Hogan and Jarrett actually wrestling, Jarrett would lie down in the ring so that Hogan would win by default. According to Bollea, this was to set up a tournament which would lead to the return of Hogan as the WCW champion.

After Hogan won the Jarrett match by default, Hogan left the arena with the championship belt, pretending to be mad because Jarrett would not wrestle him. Then Russo came on the air and delivered a speech known as a "promo," which Bollea claims was not part of the story line. In this speech, Russo called Hulk Hogan a "god damn politician" "who doesn't give a shit about this company." Russo said that Hogan always "wants to play his creative control card," and Hogan knew that his beating Jarrett was "bullshit." Russo promised that they would "never see that piece of shit again." He said that Jarrett would defend his title against Booker T. who had been "busting his ass" for 14 years in the WCW and could not "get a god damn break because of the Hulk Hogans." Russo closed with "[a]nd Hogan you big bald son of a bitch . . . KISS MY ASS!"

After this "promo," Jarrett and Booker T. wrestled for the world championship. Booker T. won the match and was awarded another championship belt.

After this July 9 event, WCW did not use Bollea in any more events in the year 2000. On March 8, 2001, counsel for WCW sent a letter to Bollea's counsel informing him that Bollea was scheduled to appear at the March 18, 2001 pay-per-view. Bollea refused to appear because he said the story lines had already been determined, there was no story line for his character, and the featured matches and wrestlers had already been advertised and promoted. WCW ceased operating on March 29, 2001, selling certain assets to World Wrestling Federation Entertainment, Inc., and changing its name to Universal Wrestling Corporation.

Bollea sued WCW for breach of contract, claiming that it did not make him the featured wrestler at the July 9 event as required by his contract and also denied him his right of creative control by changing the outcome of the story line. Bollea also sued for defamation and false light invasion of privacy on the basis of Russo's on-air speech at the July 9 event.

WCW counterclaimed for breach of contract, claiming that Bollea was obligated to appear in six pay-per-view events that year and he only appeared in two, refusing to appear at the March 18 pay-per-view event. WCW moved for summary judgment on Bollea's claims and on its counterclaim. The trial court granted WCW's motion on Bollea's claims for defamation and false light invasion of privacy. The trial court denied the motion on Bollea's and WCW's claims for breach of contract. These appeals followed.

> In moving for summary judgment, a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support any essential element of the nonmoving party's case. The nonmoving party cannot then rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

*Jaillett v. Ga. Television Co.*, 238 Ga. App. 885, 886 (520 SE2d 721) (1999).

1. In Case No. A04A1743, Bollea appeals from the trial court's grant of summary judgment to WCW on his claims for defamation

and false light invasion of privacy.[1]

The Restatement lists four elements in a cause of action for defamation: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the 'actionability of the statement irrespective of special harm.'" *Mathis v. Cannon*, 276 Ga. 16, 21 (573 SE2d 376) (2002) citing Restatement (Second) of Torts (1977), § 558. Where, as here, the defamation action involves a public figure, plaintiff must show that the alleged defamatory statements were made with actual malice, that is, with knowledge that they were false or with reckless disregard for whether they were false. *Purvis v. Ballantine*, 226 Ga. App. 246, 249 (487 SE2d 14) (1997) citing *New York Times Co. v. Sullivan*, 376 U. S. 254 (84 SC 710, 11 LE2d 686) (1964) and *Gertz v. Robert Welch, Inc.*, 418 U. S. 323 (94 SC 2997, 41 LE2d 789) (1974).

In granting summary judgment to WCW on Bollea's claims for defamation and false light, the trial court, in a thorough and well-reasoned order, held that Russo's speech was made in a fictional context and asserted opinions amounting to hyperbole, which could not be proved false. The court also found that Bollea could not establish by clear and convincing evidence that Russo's speech was made with actual malice.

The record shows that Bollea acknowledged that the match occurred as it was scripted. Bollea stated that the story line was for the New Blood, led by Russo, to run the Millionaire's Club out of wrestling. Hogan was a main target of the New Blood and there was supposed to be real hostility between him and Russo. Bollea acknowledged that he took the microphone after Jarrett lay down in the ring and defaulted the match and said "Is this your deal, Russo? That's why this company is in the damn shape it's in, because of bullshit like this." He admitted that this was said to further the story line that he and Russo hated each other. Bollea also acknowledged that he had given negative speeches about other characters in the scripts and other characters had given negative speeches about him. When asked how the Russo speech at the July 9 event was different from the many other negative speeches made about the Hulk Hogan character, Bollea responded: "The difference in that negative speech as compared in any other negative speech that's been said about me is it's the

---

[1] In order to survive as a separate cause of action, a false light claim must allege a nondefamatory statement. If the statements alleged are defamatory, the claim would be for defamation only, not false light invasion of privacy. *Time, Inc. v. Hill*, 385 U. S. 374, 390-391 (87 SC 534, 17 LE2d 456) (1967). In this case, Bollea argues that the statements made by Russo were defamatory. Consequently, the false light claim is subsumed in his defamation claim. See *Dworkin v. Hustler Magazine*, 867 F2d 1188, 1193 (9th Cir. 1989).

558

first time anyone has ever given a negative speech without running it by me and consulting with me and all of us agreeing on it that were involved."

> [T]he test to be applied in determining whether an allegedly defamatory statement constitutes an actionable statement of fact requires that the court examine the statement in its totality in the context in which it was uttered or published. It is not unusual to protect false statements of fact where, because of the context, they would have been understood as part of a satire or fiction.

(Citation and punctuation omitted.) *Ollman v. Evans*, 750 F2d 970, 1000 (D.C. Cir. 1984). Although the fictional or humorous nature of a publication will not necessarily insulate it from a libel claim, *Fisher v. Country Wide Publications,* 29 Misc. 2d 96, 98 (213 N.Y.S.2d 897, 899) (N.Y. 1961), if the allegedly defamatory statement could not be reasonably understood as describing actual facts about the plaintiff or actual events in which he participated, the publication will not be libelous. *Pring v. Penthouse Intl.*, 695 F2d 438, 442 (10th Cir. 1982).

Wrestling is a form of entertainment and the characters involved are fictional. *In re Madden*, 151 F3d 125, 130 (3rd Cir. 1998). As Bollea acknowledged, everything that occurred at the July 9 event was scripted. The story line to be advanced was that Hogan and Russo's characters hated each other. This was done by having one character deliver nasty diatribes about the other character. During his "promo" speech, Russo never mentioned Bollea, only the fictional character Hogan. Further, according to Russo's affidavit, he made this speech solely as his on-air character to advance the story line and thus to lead in to the final match of the event between Jarrett and Booker T. In light of the above, the trial court correctly concluded that the allegedly defamatory speech could not be understood as stating actual facts about Bollea.

Further, the trial court correctly held that Bollea could not prove by clear and convincing evidence that Russo's statements were made with actual malice. As stated above, under *New York Times Co. v. Sullivan*, supra, a public figure must show that the alleged defamatory statements were made with actual malice, that is with knowledge that they were false or with reckless disregard that they were false. See *Mathis v. Cannon*, 276 Ga. 16, 21 (573 SE2d 376) (2002). "The Supreme Court has explicitly held that when a plaintiff must prove *New York Times* malice, imposing liability on the basis of the defendant's hatred, spite, ill will, or desire to injure is clearly impermissible." (Punctuation omitted.) *Dworkin v. Hustler Magazine*, 867 F2d 1188, 1195 (9th Cir. 1989) (citing *Old Dominion &c. v. Austin*, 418

U. S. 264, 281 (94 SC 2770, 41 LE2d 745) (1974)). What is required is "subjective awareness of probable falsity." *Dworkin*, supra at 1194. "Therefore, if a speaker knowingly publishes a literally untrue statement without holding the statement out as true, he may still lack subjective knowledge or recklessness as to the falsification of a statement of fact required by *New York Times*." Id. at 1194-1195. Further, statements such as these, made in a fictional setting, do not contain the necessary consciousness of falsity because the speaker does not think he is publishing a statement of fact. Id. at 1194.

Therefore, looking at the totality of the circumstances and the context in which the speech was given, we conclude that Bollea's defamation claim fails. The statements could not reasonably be understood as referring to Bollea, and Bollea has not presented clear and convincing evidence of actual malice. Accordingly, the trial court did not err in holding that WCW was entitled to summary judgment on Bollea's claims for defamation and false light invasion of privacy.

2. In Case No. A04A1744, WCW argues that it was also entitled to summary judgment on Bollea's claim for breach of contract and on its counterclaim for breach of contract. In his claim, Bollea argued that WCW breached their contract when it refused to make Hogan the featured wrestler at the July 9 event, and when it denied him the right to exercise creative control over the story line. In WCW's counterclaim, it contended that Bollea breached his contract by refusing to wrestle at the March 18, 2001 pay-per-view event.

The Agreement between Bollea and WCW provided: "Bollea shall have approval over the outcome of all wrestling matches in which he appears, wrestles and performs, such approval not to be unreasonably withheld." Bollea claims WCW breached this Agreement when it allowed Russo to do a "promo" which was not approved by Bollea. WCW claims that the promos were used to develop the story lines and there is nothing in the Agreement that gives Bollea the right to approve the story lines which relate to his fictional character.

But, as the trial court pointed out in the hearing, control over the outcome of the wrestling match is worthless if half an hour later the outcome is totally changed. Bollea's attorney who negotiated the contract said that Bollea was to have control over anything that had any impact on his character, on his performance, or on his story line. Bollea testified at his deposition that he understood "outcome" to mean the way a story line would end, not just a match.

Eric Bischoff, a one-time president of WCW, who was working at the time of the July 9 event with Russo on the creative aspect of the matches, testified at his deposition that he discussed the outcome of the match at the July 9 event with Bollea and Russo. Bischoff agreed with Bollea's description of how the story line was to play out. Bischoff stated that Russo's promo and the match for the championship

between Jarrett and Booker T. had not been agreed to in their meeting and were changed without his knowledge.

Accordingly, we agree with the trial court that there remain issues of fact as to whether WCW breached its Agreement with Bollea by denying him approval of the outcome of the matches in which he participated.

Bollea also claims that WCW failed to make Hogan the featured wrestler at the pay-per-view events. Bollea's Agreement with WCW provided that he would be "the featured wrestler" at each of the six pay-per-view events. Bollea argues that he was not the featured wrestler at the July 9 event because the featured match should be the last match. The evidence is undisputed that after Hogan's match with Jarrett, there was a final match in which Jarrett wrestled Booker T. for another championship belt. Accordingly, Bollea has raised issues of fact on his claim that WCW breached the contract by not making him a featured wrestler at all pay-per-view events. The trial court did not err in denying WCW summary judgment on this claim.

3. WCW argues that the trial court erred in not granting its motion for summary judgment on its counterclaim against Bollea for breach of contract. WCW claimed that Bollea breached the Agreement by refusing to appear at the March 18, 2001 pay-per-view event. Bollea pointed out that WCW did not ask him to appear in any more events after the July 9 event until March of the next year. As to his failure to appear at the March 18, 2001 pay-per-view event, Bollea stated and the record shows that his attorney was called by a member of the WCW legal staff shortly before the event and asked if Bollea wanted to appear at the event. On March 8, 2001, the WCW attorney sent a letter to Bollea's counsel stating that Hogan was scheduled to appear at the March 18, 2001 event. Bollea contends that this letter was for form only and WCW neither wanted nor expected him to appear. He presented evidence that at the time of the letter, the story lines were already set and the matches and featured wrestlers had already been advertised and promoted. Bischoff stated in his deposition that there was no story line for Hogan at that event. Vince Russo also stated in his deposition that he never wrote another story line involving the Hogan character after the July 9 event.

Moreover, under an April 7, 2000 amendment to the Agreement, WCW was required to schedule Bollea to appear in WCW's Nitro and/or Thunder programs during the month in which he was scheduled to appear in a pay-per-view. WCW did not do so. Bollea did not appear in any Nitro or Thunder programs after the July 9 event.

Accordingly, there are issues of fact as to whether WCW breached its Agreement with Bollea. Therefore, there remain issues of fact as to whether WCW was estopped from seeking to enforce other provisions

of the contract. OCGA § 13-4-23; *Forest Commodity Corp. v. Loan Star Indus.*, 255 Ga. App. 244, 247 (564 SE2d 755) (2002).

4. Next, WCW contends that even if it did breach the contract with Bollea, he has no claim for damages. WCW points out that all required payments were made under the contract. But, Bollea was also entitled to potential bonus compensation from the pay-per-view events; namely, a specified percentage of the revenue if it exceeded guaranteed payments or if the cable or satellite buy rate exceeded a certain minimum. Also, Bollea points out that the April 7, 2000 amendment to the Agreement states that he must appear in WCW's Nitro and/or Thunder programs during the month in which he is scheduled to appear in a pay-per-view. Bollea was entitled to payment of $25,000 for each of these events. Moreover, Bollea claims his future earnings were diminished because of WCW's breach. He states that he was basically dropped from all of the wrestling story lines after the July 9 event and his money from merchandising and promotions dwindled and his entire career languished as a result.

WCW also contends that Bollea's damages, if any, are too speculative.

> The rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages. Mere difficulty at fixing their exact amount, where proximately flowing from the alleged injury, does not constitute a legal obstacle in the way of their allowance.

(Punctuation omitted.) *Freightliner Chattanooga v. Whitmire*, 262 Ga. App. 157, 162 (584 SE2d 724) (2003).

Further,

> [w]hen a plaintiff demonstrates that his business is a going concern with a history of profitability, he can establish lost profits by evidence of past earnings, expenses, and profits "with reasonable certainty to enable the jury to calculate the damages." *Witty v. McNeal Agency*, 239 Ga. App. 554, 562 (5) (521 SE2d 619) (1999). Such damages may be awarded for a "limited reasonable future time, even though they cannot be computed with exact mathematical certainty." *SMD, L.L.P. v. City of Roswell*, 252 Ga. App. 438, 441 (2) (555 SE2d 813) (2001).

*Freightliner*, supra at 162.

Here, Bollea was an established wrestler with a long history of past earnings. He can therefore submit evidence of an amount of lost profits sufficient to enable a jury to calculate the amount of damages with reasonable certainty. *Witty*, supra at 563.

5. WCW also contends that Bollea waived his claim for breach of contract by failing to complain after his appearances in events where he claimed he was not the featured wrestler and by accepting payment for those events.

> A waiver may be express, or may be inferred from actions, conduct, or a course of dealing. Waiver of a contract right may result from a party's conduct showing his election between two inconsistent rights. Acting on the theory that the contract is still in force, as by continuing performance, demanding or urging further performance, or permitting the other party to perform and accepting or retaining benefits under the contract, may constitute waiver of a breach. However, all the attendant facts, taken together, must amount to an intentional relinquishment of a known right, in order that a waiver may exist.

*Smith v. Gordon*, 266 Ga. App. 814, 815 (598 SE2d 92) (2004); *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 257 (3) (381 SE2d 322) (1989). See also *MNM 5, Inc. v. Anderson/6438 Northeast Partners*, 215 Ga. App. 407, 410 (451 SE2d 788) (1994) ("A party may by his conduct waive a legal right but where the only evidence of an intention to waive is what a party does or forbears to do, there is no waiver unless his acts or omissions to act are so manifestly consistent with an intent to relinquish a then-known particular right or benefit that no other reasonable explanation of his conduct is possible."). And, where the evidence conflicts, the issue of waiver is a factual question for the jury. *McCullough v. McCullough*, 263 Ga. 794, 795 (439 SE2d 486) (1994).

As discussed above, there are issues of fact as to whether Bollea approved the outcome at the July 9 event or acquiesced to not being the featured wrestler. Also, as discussed in Division 4, there are issues of fact as to whether Bollea is entitled to damages beyond the minimum payments made under his contract. See *Piedmont Southern Life Ins. Co. v. Copeland*, 111 Ga. App. 852 (143 SE2d 514) (1965). In light of the above, we conclude that a factual dispute remains as to waiver. See *Stronghaven, Inc. v. Ingram*, 252 Ga. App. 124, 128 (555 SE2d 49) (2001).

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JANUARY 21, 2005 —
RECONSIDERATION DENIED FEBRUARY 10, 2005 — 

*Chorey, Taylor & Feil, John L. Taylor, Jr., Otto F. Feil III, Greenberg Traurig, James H. Cox*, for appellant.

*Troutman Sanders, James A. Lamberth, Joel P. Howle, Jaime L. Theriot*, for appellees.