A07A1841. TORRANCE v. MORRIS PUBLISHING GROUP, LLC et al.
(656 SE2d 152)

SMITH, Presiding Judge.

In this libel action arising out of a series of articles published in the Savannah Morning News, plaintiff William Torrance appeals the trial court's order granting summary judgment to various defendants connected with the newspaper ("the newspaper defendants"). In Torrance v. Morris Publishing Group, 281 Ga. App. 563 (636 SE2d 740) (2006) ("Torrance I"), we affirmed summary judgment to the newspaper defendants in the companion case filed by the appellant's daughter. There, with respect to the daughter's claims of libel, we held that the articles were privileged under OCGA § 51-5-7 (8) because they fairly and honestly reported the information contained in police reports and because the reporters negated any showing of actual malice that could have sustained the libel claim. Id. at 570-572 (3) (a).[1] Here, we need not reach the issue of conditional privilege, because Torrance acknowledges he has not appealed the trial court's determination that he is a public figure. We therefore affirm the grant of summary judgment to the newspaper defendants on the second basis in Torrance I: the reporters' negation of the claim of actual malice.

The facts are recited at some length in Torrance I, and we will not repeat them here except as necessary for resolution of the issues presented. This action was brought by William Torrance, the city manager of the City of Vidalia, against four corporations connected

[1] Our opinion in Torrance I was issued before the trial court ruled in the case before us, and the trial court relied on it in its ruling.

with the Savannah Morning News, the editor and two reporters for the newspaper, and a City of Vidalia police investigator,[2] alleging that he was defamed by a series of articles published in the newspaper. The trial court's summary, taken from our earlier opinion in *Torrance I*, which in turn drew on the earlier trial court order in that case, is an accurate capsule description of the facts:

> The series had to do with a thwarted GBI investigation of drug use, alleged unlawful recording and dissemination of a GBI agent's (Tapley's) cellular telephone calls, her federal case against city officials, the mysterious death of a young black man whose body was found in the swimming pool of the city attorney, and belief by some that the deceased had been outside the window of the city manager's daughter on the night before he died.

281 Ga. App. at 563, n. 1. Specifically, Torrance complains that the series libeled him in six respects: (1) by stating that he was "let go" as city manager of Eastman, Georgia; (2) by reporting allegations that he was involved in drug use while in Eastman; (3) by implying that he was responsible for the death of Henry Dickerson, the man found dead in the city attorney's pool; (4) by reporting that he was involved in the wiretapping of a GBI agent's telephone calls and subsequent efforts to remove her from the Dickerson investigation; (5) by reporting various statements concerning the Dickerson investigation that placed Torrance in a false light; and (6) by reporting that Torrance's daughter's window was nailed shut (the issue disposed of in our opinion in *Torrance I*).

The trial court entered a very comprehensive order dealing with many issues, including venue, Torrance's status as a public official, actual malice, and a point-by-point analysis of the allegedly defamatory statements. In his sole enumeration of error, Torrance contends the trial court erred in granting the newspaper defendants' motion for summary judgment. The focus of Torrance's appeal is on the content of the statements and the question of actual malice; he acknowledges that he is not appealing the determination that he was a public figure at the time of the statements.

As a public figure, Torrance must meet a very high standard of proof to prevail on the issue of defamation, regardless of the existence of any privilege under OCGA § 51-5-7. He must

---

[2] The police investigator is not a party to this appeal. Another police officer named in *Torrance I* obtained summary judgment on the basis of the one-year statute of limitation for injury to reputation, and we affirmed. Id. at 566 (1).

show by clear and convincing evidence that false and defamatory statements were published with actual malice. "Actual malice" in a constitutional sense is not merely spite or ill will, or even outright hatred; it must constitute actual knowledge that a statement is false or a reckless disregard as to its truth or falsity.

Actual or constitutional malice is different from common law malice because knowledge of falsity or reckless disregard of the truth may not be presumed nor derived solely from the language of the publication itself. Reckless disregard requires clear and convincing proof that a defendant was aware of the likelihood he was circulating false information. Thus, it is not sufficient to measure reckless disregard by what a reasonably prudent man would have done under similar circumstances nor whether a reasonably prudent man would have conducted further investigation. The evidence must show in a clear and convincing manner that a defendant in fact entertained serious doubts as to the truth of his statements.

(Citations and punctuation omitted.) *Atlanta Humane Society v. Mills*, 274 Ga. App. 159, 165 (3) (618 SE2d 18) (2005). As we observed in *Torrance I*,

[a]lthough the burden is on the plaintiff at trial to prove actual malice, when a defendant moves for summary judgment, it must negate a plaintiff's claim of actual malice by establishing that it lacked knowledge that the defamatory matter was false or did not publish it with reckless disregard as to whether it was false or not.

(Citations, punctuation and footnote omitted.) 281 Ga. App. at 572 (3) (a).

Here, the reporters who investigated and wrote the stories testified by affidavit that they thoroughly researched the stories, wrote them carefully, and reread them as they went through the editing process. Both testified that "there is no statement in any of them that I believed or so much as suspected was a false statement about William Torrance." The editor of the stories likewise testified that there was nothing in any of the articles that he knew or suspected to be false.

More specifically, the reporters detailed the sources for each of the statements complained of by Torrance. These included copies of police reports, crime scene logs, and notes; pleadings and depositions

in a related federal action brought by the GBI agent whose telephone calls were intercepted, including the sworn testimony of Torrance;[3] and personal interviews with members of the Eastman city council, police and GBI investigators, an attorney who was a former editor of a local newspaper, and Torrance himself. With respect to each statement, the reporters swore that they reported the information provided by an identified source and had no reason to believe the information provided was false.

After this showing was made, it was Torrance's duty to "come forward with evidence of malice so as to create a jury issue on this claim." *Torrance I*, 281 Ga. App. at 572 (3) (a).

> Where there is uncontradicted testimony by a party as to a certain fact then the opposing party must produce "some other fact" to the contrary. *If the "other fact" is shown directly, that is sufficient for the case to go to a jury, but if it is circumstantial then it must be evidence sufficient to support a verdict.* The circumstantial evidence must be inconsistent with the direct testimony and must tend to establish the conclusion projected while rendering less probable all inconsistent conclusions. The evidence must not constitute a "mere inconclusive inference" for then it is insufficient to withstand summary adjudication.

(Citations and punctuation omitted; emphasis in original.) *Rabun v. McCoy*, 273 Ga. App. 311, 317 (2) (615 SE2d 131) (2005). Here, Torrance very briefly lists four circumstances that he claims support a finding of actual malice, but none of these suffices to meet the relevant standard.

The alleged failure to investigate fully regarding the daughter's window was disposed of in our opinion in *Torrance I*. Torrance also complains that the reporters reported false information and ignored other information, but, as noted above, in each instance the reporters cited official records, deposition testimony and pleadings in the federal litigation, or personal interviews of identified individuals. They testified that they obtained particular information that contradicted Torrance's version of the facts.

Torrance cannot show actual malice merely by making assertions contrary to those of the identified sources from which the newspaper defendants obtained their information. "[T]he press need not accept denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in

---

[3] See *Tapley v. Collins*, 211 F3d 1210 (11th Cir. 2000).

themselves, they hardly alert the conscientious reporter to the likelihood of error. [Cit.]" (Punctuation omitted.) *Harte-Hanks Communications v. Connaughton,* 491 U. S. 657, 692 (V), n. 37 (109 SC 2678, 105 LE2d 562) (1989).

Moreover, the newspaper defendants did not conceal this information, but published Torrance's denials and other contradictory evidence in the articles themselves. This is in contrast to such decisions as *Lake Park Post v. Farmer,* 264 Ga. App. 299, 300 (2) (590 SE2d 254) (2003), in which we found actual malice because the defendants not only failed to investigate but also refused to print any contradictory evidence regarding the event reported in their news articles, although all other evidence contradicted their version, including eyewitnesses, multiple official reports, and a police patrol car video. See also *Harte-Hanks,* supra, 491 U. S. at 692 (refusal to listen to conclusive tape recording despite multiple witnesses' denials of reporter's version of events showed "purposeful avoidance of the truth" and evidence of actual malice).

Here, while Torrance argues that malice is shown because the series "presented a distorted interpretation" of the facts, errors of fact caused by negligence or by adoption of one of a number of possible interpretations do not show actual malice. *Morton v. Stewart,* 153 Ga. App. 636, 640 (2) (a) (266 SE2d 230) (1980). Even a total failure to investigate does not establish bad faith, and failure to investigate fully or to the degree desired by the plaintiff "does not evince actionable reckless disregard." *Brewer v. Rogers,* 211 Ga. App. 343, 348 (2) (c) (439 SE2d 77) (1993). And "unsupported inferences or conjecture regarding a defendant's motivation do not suffice to show malice." (Citation, punctuation and footnote omitted.) *Smith v. Henry,* 276 Ga. App. 831, 833 (1) (625 SE2d 93) (2005).

Finally, Torrance contends that a jury issue was created with respect to actual malice because Torrance testified at his deposition that one of the reporters was "hostile and agitated" while interviewing him and told him that he ought to be in prison. As the trial court noted, three witnesses contradicted Torrance's account of this interview. But, as the trial court also observed, even if we assume Torrance's assertion to be true, as we must on summary judgment, " '[a]ctual malice' in a constitutional sense is not mere spite or ill will; it must be actual knowledge that a statement is false or reckless disregard as to its truth or falsity. [Cit.]" *Sparks v. Peaster,* 260 Ga. App. 232, 237 (2) (581 SE2d 579) (2003). "[I]mposing liability on the basis of the defendant's hatred, spite, ill will, or desire to injure is clearly impermissible." (Citations and punctuation omitted.) *Bollea v. World Championship Wrestling,* 271 Ga. App. 555, 558 (1) (610 SE2d 92) (2005).

Under these circumstances, Torrance has failed to meet his heavy burden to show actual knowledge or reckless disregard of truth or falsity, and the trial court did not err in granting summary judgment in favor of the newspaper defendants.

*Judgment affirmed. Barnes, C. J., and Miller, J., concur.*

DECIDED DECEMBER 7, 2007 —
RECONSIDERATION DENIED JANUARY 9, 2008 

*Savage, Turner, Pinson & Karsman, Brent J. Savage, Kathryn H. Pinckney*, for appellant.

*Salter & Shook, Susan Salter Shook, Hull, Towill, Norman, Barrett & Salley, David E. Hudson*, for appellees.