21953. KAUFMAN BROTHERS & CO. INC. v. PAPPAS.

DECIDED JUNE 14, 1932.   ADHERED TO ON REHEARING, AUGUST 31, 1932.

*Jones, Jones, Johnston & Russell, Mallory C. Atkinson,* for plaintiff in error.

*Robert G. Plunkett, L. D. Moore,* contra.

LUKE, J.   On May 1, 1923, Peter Pappas and John Andros leased to Williams Clothing Stores Inc. a store building in Macon for the term of ten years.   At that time the building was owned jointly by Pappas and Andros, but on January 12, 1927, Andros sold his interest in the building to Pappas and transferred to Pappas his right and interest in the rent contract.   The Williams Clothing Stores paid the rent until September 6, 1929, and on that date transferred and assigned its lease to Kaufman Brothers & Company Inc., the plaintiff in error.   Kaufman Brothers & Company occupied the building as a place of business until sometime in September, 1930, and paid the rent from the time of the assignment of the lease through October, 1930, but refused to pay rent for any time thereafter.   Pappas, individually and as successor in title to Andros, levied a distress warrant for rent for the months of November, December, and January, and the defendant gave bond. The judge of the city court of Macon, presiding without the intervention of a jury, rendered judgment in favor of Pappas.   Kaufman Brothers & Co. made a motion for a new trial, which was overruled, and the movant excepted.

The claim "in defendant in error's distress warrant is not questioned as to amount."   The controlling question in the case is whether or not there was a mutual understanding and election between Pappas and Kaufman Brothers & Co. that the relation of landlord and tenant existed between them.   There is evidence to show that Kaufman Brothers & Co., after they ceased to do business in said store, retained the keys to the store, kept fixtures there, went in and out of the store, and used the windows of the store to direct customers to their new place of business.   There is also ample

evidence that Pappas and Kaufman Brothers & Co. mutually understood and agreed that they were landlord and tenant respectively. The lease from Pappas and Andros to Williams Clothing Stores provided that the lessee could sublet the premises; but, as is undisputed, Williams Clothing Stores did not exercise this right. On the contrary Kaufman Brothers & Co. had the lease transferred and assigned to them, thereby putting themselves in the stead of Williams Clothing Stores as tenant. Pappas testified: that Kaufman Brothers & Co. paid him the rent for more than a year from the time that they went into possession of the building, by sending a check from New York; "the Williams Clothing Stores paid me no rent at all. I had called on them for no rent during that period of time;" Mr. Julian Kaufman asked me "to release him from the rent;" witness refused to release Kaufman Brothers & Co., and told him that he would expect him to pay the rent specified; that Kaufman offered witness $1200 to release him from the rent, and he refused to release him; that at the time of this conversation and this offer by Kaufman in September, 1930, "Kaufman Brothers were in the possession of the building;" that they moved out the latter part of September, and Kaufman paid the October rent; that Mr. Cohen, manager of the Macon Kaufman Brothers store, told Pappas, after Kaufman Brothers had bought out Williams Clothing Store and had the lease assigned to them, to "go to Europe and have a good time; you have a tenant now that can pay the rent;" that Mr. Cohen, manager of Kaufman Brothers store in Macon, asked Pappas to paint the walls of the store, and Pappas did paint the walls, and "that was when Kaufman Brothers were in there;" that checks for the rent came "from Kaufman Brothers;" that Kaufman Brothers had been in the store 8-1/2 months when he (Pappas) went to Europe, and that Cohen told him to "go to Europe, you'll get your rent, you have a good corporation behind it." Pappas also offered in evidence a letter written by Kaufman Brothers on July 10, 1930, in which they said: "We realize full well that we have entered into a definite lease with you covering the store-room at 312 Second Street, Macon. However, as property owners ourselves, we have been obliged to make many reductions in rentals to tenants of one kind or another, and we therefore appeal to you to give us some relief in the way of a reduction in rental until there is some improvement in general

business. Any reduction in rental that you may see fit to make us, of course, will not affect any other terms of the lease. In addition, any reduction you give us need only be of a temporary nature until there is a recovery in business. It is needless to say that any consideration you give us will be appreciated. You may be sure we would not make such a request unless conditions made it absolutely necessary. It is not our policy or our intention to welsh on our agreement, but the situation has become so critical that we feel that some consideration will be to our mutual benefit." The purpose of requiring a landlord to take some action to show that he regards a tenant as his tenant is to put the tenant upon notice; and this letter, as well as the conversation that Kaufman had with Pappas, clearly showed that Kaufman Brothers had notice and thoroughly understood that they were tenants of Pappas, and that they had accepted the tenancy and considered themselves bound thereby. And Pappas's refusal to reduce the rent shows that he not only elected to accept Kaufman Brothers as tenants, but that he was insisting upon their complying with the terms of the tenancy. Undoubtedly there was a recognition and acceptance, on the part of both, of the relationship of landlord and tenant. Kaufman Brothers had the lease assigned to them and moved into the store; and Pappas (whose place of business was next door to the store) permitted them to move in. Kaufman Brothers paid the rent for more than a year, and Pappas accepted the rent. Kaufman Brothers asked for some painting to be done in the store; and Pappas did the painting. Kaufman Brothers admitted in writing that they had the store rented and asked for a reduction of the rent; and Pappas insisted that they were bound, as tenants, for the rent specified, and refused to reduce it. The relationship of landlord and tenant being mutually recognized, accepted and acted upon by the parties, the tenant is bound for the rent.

The amendment to the motion for a new trial is but an amplification of the general grounds. The evidence amply supports the verdict and judgment, and the court properly overruled the motion for a new trial.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*

### ON REHEARING.

LUKE, J. It is true, as stated in the motion for a rehearing,

that the undisputed evidence showed that after the original tenant had assigned its lease to Kaufman Brothers & Co., the landlord continued to hold, hypothecate, and collect negotiable rent notes theretofore executed by the original tenant and delivered by it to the landlord. (However, after such assignment, the landlord did not at any time, by any means whatsoever, call upon the original tenant to pay rent or to pay a note, and did not make any collection whatever from the original tenant.) While that evidence may "strongly indicate" that the landlord did not intend to release the original tenant from liability (*Hooks* v. *Bailey*, 5 *Ga. App.* 211, 214, 62 S. E. 1054), it is not conclusive on that question. If other evidence disclosed that the landlord, by some affirmative action, had elected to treat the subtenant as his tenant, then the original tenant was thereby released from liability, notwithstanding the fact that the landlord continued to hold, hypothecate, and collect the notes given him by the original tenant. The controlling question in the case is: Did the landlord, during the life of the lease, elect, by some affirmative action, to make the subtenant his tenant? It is well settled that the landlord could not elect to treat the subtenant as his tenant without releasing the original tenant from liability. However, "a contract of substitution [of tenants] may be created, as any other similar contract, by a mutual course of conduct indicating consent, as well as by express words. What course of conduct or what acts are sufficient to cause such contract to be implied is generally for the jury." *Cuesta* v. *Goldsmith*, 1 *Ga. App.* 48, 55 (57 S. E. 983).

In our opinion, the evidence discloses that the landlord had taken an affirmative action which showed that he had elected to make the subtenant his tenant. The evidence, together with the legal inferences arising therefrom, authorized the judge (sitting without the intervention of a jury) to find that during the life of the lease, and while the subtenant was in possession of the premises, an agent for the subtenant, and acting therefor, verbally requested the landlord to release the subtenant from future rents and offered to pay him $1200 for such a release, and that the landlord promptly refused to grant such a release, and stated in substance that he would look to the subtenant to pay the specified rents. In all events, this and other evidence raised an issue of fact upon the controlling question in the case, and the trial judge did not err in rendering judgment in favor of the landlord.

*Judgment adhered to. Broyles, C. J., and Hooper, J., concur.*

HOOPER, J., concurring specially. I think the judgment of affirmance in this case is correct under the principle of law that Kaufman Brothers & Company as transferee of the lease was liable because the leasehold interest was vested in it, and liability to pay rent was a covenant running with the land. *Harms* v. *Entelman,* 21 *Ga. App.* 295 (94 S. E. 276), and cit.; *Mallette* v. *Hillyard,* 117 *Ga.* 423 (43 S. E. 779). The principles of law governing a sub-tenant and a transferee of the lease are different. See *Potts-Thompson Liquor Co.* v. *Potts,* 135 *Ga.* 451, 457, 458 (69 S. E. 734), and cit.