A90A1778. BLOCK et al. v. BROWN et al.
(404 SE2d 288)

McMURRAY, Presiding Judge.

This landlord-tenant case concerns an airplane hangar at the Cartersville-Bartow County Airport. The hangar along with other airport facilities was leased by Bartow County to Watts Aviation, Inc. ("Watts"). In August of 1985 the hangar was leased on a month-to-month basis by Watts to Terry Reynolds ("Reynolds") doing business as Multi-Air, Inc. ("Multi-Air"). Thereafter, Reynolds was contacted by plaintiff Block about renting a portion of the hangar. Reynolds and Block entered into an arrangement whereby Block rented, from Reynolds, a portion of the hangar for the use of his business, plaintiff Jet-Air, Inc. ("Jet-Air").

Due to Reynolds' financial difficulties, Block increased his rental payments until they equaled the payments due from Reynolds to Watts. In connection with the increased rental payments, Reynolds on behalf of Multi-Air and Block on behalf of Jet-Air executed an agreement which purported to assign the lease of the hangar to Jet-Air, reserving to Multi-Air the reasonable use of the hangar so long as

it did not interfere with the activities of Jet-Air. Neither Watts nor its successor in interest defendant Etowah Flight Service, Inc. ("Etowah"), nor any officer of either was a party to the purported assignment agreement.

Under the assignment agreement Jet-Air was to deliver the rent payment to Multi-Air (or its successor, R&H Aviation), which was to pay over the rent proceeds to Watts or its successor. After the execution of the assignment Block (and Jet-Air) continued a pattern of late payment of the rent. Thereafter, Reynolds notified Block of his intention to leave the premises and entered into a lease termination agreement on behalf of R&H Aviation with defendant Etowah, wherein the lease of the hangar by R&H Aviation (successor of Multi-Air) was terminated September 30, 1986.

Upon being told by Reynolds that he intended to vacate the premises, Block tendered a check for rent for October of 1986 to defendant Brown, president of Etowah (successor in interest of Watts). Block's check was returned, the property of Block and Jet-Air was removed from the premises, certain modifications to the hangar which had been made for the use of Block and Jet-Air were destroyed, and the premises were occupied by a new tenant, defendant Bescorp Aviation, Inc. ("Bescorp").

Plaintiffs Block and Jet-Air filed this action against Etowah, Etowah's president Brown, Bescorp, and Bescorp's president Earnhardt. Plaintiffs' complaint states claims predicated on theories of trespass, interference and breach of contract, conversion, and bailment. Plaintiffs appeal from the denial of their motion for partial summary judgment, the grant of summary judgment in favor of defendants Brown and Etowah, and from the grant of these defendants' motion to allow a counterclaim. *Held*:

1. The primary issue in the case sub judice is the status of plaintiffs Block and Jet-Air, that is, whether they were tenants or trespassers. "A tenant who has only a usufruct cannot convey it without the consent of the landlord. OCGA § 44-7-1 (Code Ann. § 61-101). Where an assignment is made that violates a statutory or contractual provision against assignment, 'the transferee in such a case would be a mere intruder and subject to be summarily ousted by the landlord.' *Bass v. West*, 110 Ga. 698 (5) (36 SE 244) (1900). A tenant has no right to impose his subtenancy upon the landlord without his consent. *Filsoof v. Chatham*, 144 Ga. App. 464, 467 (241 SE2d 582) (1978). The provision against assignment, however, is solely for the protection or convenience of the landlord and may be waived and, when the landlord treats the lease as assigned, he is estopped from denying the validity of the assignment. *Carparking v. Chappell's*, 96 Ga. App. 862 (101 SE2d 894) (1958); *Saunders v. Sasser*, 86 Ga. App. 499 [(1a)] (71 SE2d 709) (1952). 'While the landlord is not bound as to facts o[f]

which he does not have knowledge. (*Walker v. Wadley*, 124 Ga. 275, 52 S.E. 904), if he has actual knowledge of the fact of assignment, it is his duty to make inquiry, and he will be deemed to know all things to which such inquiry would lead. (Cits.)' *Carparking v. Chappell's*, supra at 865. Where the landlord treats the lease as assigned, even though the original [lessee] had no right to assign it without his consent, the landlord is estopped from claiming that the assignment is made without his consent. *Saunders v. Sasser*, supra; *Draper & Kramer v. Lerow*, 143 Ga. App. 413 (238 SE2d 560) (1977).

"If the lessee of real estate having only a usufruct sublets or assigns the lease to another, the landlord may, by affirmative acts, elect to treat the sublessee or assignee occupying the premises as his immediate tenant. *Hudson v. Stewart*, 110 Ga. 37, 39 (35 SE 178) (1899); *McDonald v. Bell*, 23 Ga. App. 562 (1) (99 SE 54) (1919). In *Liberty Loan Corp. of Lakewood v. Leftwich*, 118 Ga. App. 383 (163 SE2d 837) (1968), the court held that if someone other than the lessee or his recognized assignee occupies the premises and pays rent to the landlord as if he were a subtenant, the landlord may elect to treat him as a tenant occupying under the lease and bind himself and the tenant to the unexpired portion of the lease or expel him as a mere intruder. The landlord's election may be effected by an express recognition of the subtenant or be implied from affirmative acts and conduct. The election establishes privity of contract between the subtenant and the landlord and renders the former liable to the landlord as a tenant. *Leftwich v. Liberty Loan Corp. of Lakewood*, 116 Ga. App. 799 (159 SE2d 142) (1967); *Lawson v. Haygood*, 202 Ga. 501 (1) (43 SE2d 649) (1947).

"It is necessary, therefore, to determine what acts indicate the landlord's acceptance of the subtenant as his tenant. The landlord's mere acceptance of rent . . . does not indicate that the landlord elected to treat the subtenant as his tenant so as to release the original tenant from liability under the lease. *Hooks v. Bailey*, 5 Ga. App. 211 (62 SE 1054) (1908). If, however, the landlord treats the lease as assigned, he is estopped to claim the assignment was made without his consent. *Draper & Kramer v. Lerow*, supra at 414. ' "(A) contract of substitution (of tenants) may be created . . . by a mutual course of conduct indicating consent, as well as by express words. What course of conduct or what acts are sufficient to cause such contract to be implied is generally for the jury." (Cits.)' *Kaufman Bros. & Co. v. Pappas*, 45 Ga. App. 479, 482 (165 SE 326) (1932)." *Step Ahead v. Lehndorff Greenbriar, Ltd.*, 171 Ga. App. 805, 806, 807 (321 SE2d 115).

After a thorough review of the record, we find that the uncontroverted evidence shows that neither Watts nor Etowah nor their officers committed any act indicating a consent or election to accept

Block or Jet-Air as a tenant. While both Watts and Etowah were aware of the presence of Block and Jet-Air on the premises, the landlords continued to receive rent only from Reynolds and his successive business entities, albeit Reynolds sometimes paid the rent by endorsing over checks written on the accounts of Block or Jet-Air. Contrary to the assertion of plaintiffs, we do not find any evidence that the president of Watts consented to Block being a co-tenant of the premises. The evidence shows that Mrs. Watts, when president of Watts, was told that a fellow wanted to rent some space in the hangar and was going to move in, but her consent to this arrangement was not elicited and there is no evidence that such consent was given.

Each theory stated in plaintiffs' complaint is predicated on plaintiff's alleged status as a lawful tenant of the premises rather than a trespasser. This allegation is shown by the uncontroverted evidence to be incorrect, therefore plaintiffs as trespassers were not entitled to notice to vacate provided by statute for tenants at will, nor were defendants required to initiate a dispossessory proceeding in order to remove plaintiffs from the premises. The superior court did not err in denying plaintiffs' motion for partial summary judgment and in granting the motion for summary judgment of defendants Brown and Etowah.

2. After April 3, 1989, claims for abusive litigation require the final termination of the proceeding in which the alleged abusive litigation occurred. The holding in *Yost v. Torok*, 256 Ga. 92 (344 SE2d 414), was thus amended by statute. See OCGA § 51-7-80 et seq. The superior court's grant, after April 3, 1989, of defendants' motion to allow a counterclaim stating a claim for abusive litigation was error.

*Judgment affirmed in part and reversed in part. Sognier, C. J., and Carley, J., concur.*

DECIDED FEBRUARY 28, 1991 —
REHEARING DENIED MARCH 13, 1991 —

*Alan Z. Eisenstein, Robert M. Goldberg*, for appellants.
*Barnes, Browning, Tanksley & Casurella, Jerry A. Landers, Jr., Smith, Eubanks, Smith & Darden, Hansell L. Smith*, for appellees.