### A09A1634. STEED v. FEDERAL NATIONAL MORTGAGE CORPORATION et al.
(689 SE2d 843)

BERNES, Judge.

Ellery Steed, proceeding pro se, commenced this action against Federal National Mortgage Corporation ("Fannie Mae") and Safeguard Properties, Inc. alleging that he had been wrongfully evicted from the upstairs and downstairs units of a home that he formerly owned but that had been purchased by Fannie Mae in a foreclosure sale. The trial court entered an order granting summary judgment to the defendants on all of Steed's claims; denying partial summary judgment to Steed on his claims relating to the upstairs unit; and declining to enter a default judgment against Safeguard based on alleged discovery abuse. Steed appeals these rulings. For the reasons discussed below, we affirm.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no

evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. We review de novo a trial court's grant of summary judgment. A grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed.

(Citations and punctuation omitted.) *Duke Galish, LLC v. Manton*, 291 Ga. App. 827, 827-828 (662 SE2d 880) (2008).

So viewed, the record reflects that in July 2004, Steed purchased a residential property that was divided into an in-law suite in the downstairs unit and a three-bedroom upstairs unit (the "Property"). Steed lived in the downstairs unit and leased the upstairs unit to tenants. Beginning in September 2007, Steed leased the upstairs unit to Helene Webster on a month-to-month basis.

On or about December 17, 2007, Steed received correspondence from his mortgage company advising him that he was in arrears on his mortgage payments and a Notice of Sale Under Power, which informed him that the Property would be sold under foreclosure on February 5, 2008. After being informed of the impending foreclosure sale, Steed commenced dispossessory proceedings against Webster for the nonpayment of rent. Steed and Webster, however, resolved the rent issue in mediation and entered into a consent judgment purportedly entitling Webster to remain in the upstairs unit until February 13, 2008.

On February 5, 2008, the Property was sold in a foreclosure action on the courthouse steps. The Property was purchased at auction by Fannie Mae. No court has reversed or overturned the foreclosure of the Property.

Following the foreclosure sale, Fannie Mae hired Safeguard, a company that specializes in securing and maintaining foreclosed properties. Fannie Mae instructed Safeguard to secure the Property if it was unoccupied, and, if the Property was occupied, to make contact with the occupant and attempt to negotiate a "cash for keys" agreement in which cash would be paid to the occupant in exchange for an agreement to vacate. Safeguard thereafter engaged the services of an independent contractor to carry out Fannie Mae's instructions.

On February 8, 2008, the Safeguard contractor traveled to the Property and unsuccessfully attempted to make contact with Steed, who was not at home in the downstairs unit. The contractor did make contact with Webster and provided her with a toll free number to call Safeguard so that she could negotiate a cash for keys agreement with respect to the upstairs unit. Webster subsequently entered into a cash for keys agreement with Safeguard and vacated

the upstairs unit in return for $1,000.

After Webster had vacated the premises, the Safeguard contractor changed the locks on the upstairs unit and installed a lockbox on February 18, 2008. The contractor also affixed a sticker to the door of the upstairs unit identifying Safeguard as the entity responsible for securing the unit and providing contact information for Safeguard. According to the contractor, he also entered and inspected the upstairs unit on that date and saw no evidence that anyone was residing in the unit at that time. In contrast, Steed alleged that he had moved some of his own personal items into the upstairs unit after Webster had vacated the premises and was spending most of his days there, although he continued to sleep at night in the downstairs unit. According to Steed, his personal items were taken from the upstairs unit without his permission on February 18.

Despite the foreclosure sale, Steed continued to live in the downstairs unit. Fannie Mae demanded that Steed relinquish possession and, when he refused to do so, filed a dispossessory action in magistrate court on February 27, 2008. On April 8, 2008, the magistrate court entered a judgment of writ of possession in favor of Fannie Mae as to the downstairs unit. The magistrate court ordered Steed to pay rent during the pendency of the appeal of $500 per month. Steed's appeal from the judgment granting the writ of possession remains pending.[1]

Steed alleged that subsequent to the grant of the writ of possession, some unknown person or persons entered the downstairs unit on May 29, 2008 and broke the door lock, changed the deadbolt, and "snoop[ed] around" the unit while Steed was at work. He regained entry into the downstairs unit on the day of the incident and has continued living there.

Claiming that he had been wrongfully evicted from the upstairs and downstairs units, Steed brought the instant pro se action against Fannie Mae and Safeguard seeking compensatory and punitive damages. With respect to the upstairs unit, Steed alleged that when the defendants changed the locks on February 18, 2008, he was in possession of that unit as a tenant at sufferance. As such, he contended that the defendants were liable for wrongful eviction, trespass, and negligence for locking him out of the upstairs unit

---

[1] The defendants did not raise the defenses of collateral estoppel or res judicata in their motions for summary judgment. See OCGA § 9-12-19 ("Where a judgment is entered and, within the time allowed for entering an appeal, an appeal is entered, the judgment shall be suspended."); *Greene v. Transport Ins. Co.*, 169 Ga. App. 504, 506 (3) (313 SE2d 761) (1984) ("It is the general rule that a judgment sought to be used as a basis for the application of the doctrine of res judicata or collateral estoppel must be a final judgment. In Georgia a judgment is suspended when an appeal is entered within the time allowed. And the judgment is not final as long as there is a right to appellate review.") (citation and punctuation omitted).

without first obtaining a writ of possession in a dispossessory action. With respect to the downstairs unit, Steed alleged that the defendants had carried out the break-in and changing of the door lock that occurred on May 29, 2008, and, consequently, had violated the Fair Business Practices Act of 1975 ("FBPA"), OCGA § 10-1-390 et seq., and were liable for intentional infliction of emotional distress.[2]

The defendants answered and, following discovery, moved for summary judgment on all of Steed's claims. Steed cross-moved for partial summary judgment on his claims for wrongful eviction, trespass, and negligence pertaining to the upstairs unit. Steed also moved for entry of a default judgment against Safeguard based on its failure to timely produce certain company policy manuals in response to a request for production. After conducting two hearings related to the various motions, the trial court granted the defendants' motion for summary judgment, denied Steed's motion for partial summary judgment, and denied Steed's motion for entry of a default judgment against Safeguard. This appeal followed.

1. In his first enumeration of error, Steed contends that the trial court erred by granting summary judgment to the defendants, and by denying partial summary judgment in his favor on his claims for wrongful eviction, trespass, and negligence relating to the upstairs unit. We disagree.

(a) Steed first asserts that "it is sufficient to assume . . . that [he] was a tenant at sufferance following foreclosure" of the upstairs unit, and that, consequently, the defendants as a matter of law were not entitled to lock him out of that unit on February 18, 2008 without first obtaining a writ of possession. But Steed is asking this Court to assume a primary point of contention between the parties, namely, his legal status with respect to the upstairs unit as of February 18. The burden is on Steed to provide citation to authority and legal argument to support his assertion, see Court of Appeals Rule 25 (a) (3), rather than rely on assumptions. In any event, we have reviewed the record and conclude that, as a matter of law, the defendants did not have to initiate dispossessory proceedings and obtain a writ of possession prior to changing the locks on the upstairs

---

[2] Steed asserted additional claims with respect to the upstairs and downstairs unit, but Steed does not challenge on appeal the trial court's grant of summary judgment to the defendants on those claims. Any allegation of error with respect to those additional claims has been abandoned. See Court of Appeals Rule 25 (a) (3) and (c) (2).

Steed did assert a fraud claim, but the trial court found that Steed had expressly abandoned that claim in open court at the pretrial conference. While Steed challenges the trial court's finding on appeal, no transcript of the pretrial conference has been included in the record on appeal. The burden was upon Steed to show error affirmatively by the record, and in the absence of a transcript, we presume that the trial court's finding was correct. See *Boles v. Lee*, 270 Ga. 454, 455 (1) (511 SE2d 177) (1999).

unit because Steed was not a tenant at sufferance under the circumstances of this case.

The exclusive method whereby a landlord may evict a tenant is through a properly instituted dispossessory action filed pursuant to OCGA § 44-7-50 et seq. See *Roberts v. Roberts*, 205 Ga. App. 371, 372 (2) (422 SE2d 253) (1992). Thus, a landlord who forcibly evicts a tenant without filing a dispossessory action and obtaining a writ of possession is subject to damages in tort for the wrongful eviction. See id.; *Entelman v. Hagood*, 95 Ga. 390, 392-393 (22 SE 545) (1894); *Lanier v. Kelly*, 6 Ga. App. 738, 739-740 (65 SE 692) (1909).

A landlord-tenant relationship exists between a legal title holder and a tenant at sufferance such that the dispossessory procedures set forth in OCGA § 44-7-50 et seq. are applicable. See *Frank v. Fleet Finance, Inc. of Ga.*, 227 Ga. App. 543, 547 (1) (c) (489 SE2d 523) (1997); *Cloud v. Ga. Central Credit Union*, 214 Ga. App. 594, 598 (8) (448 SE2d 913) (1994); *Stevens v. Way*, 167 Ga. App. 688, 690 (5) (307 SE2d 507) (1983). In contrast, because a landlord-tenant relationship must exist before a dispossessory action will lie, see *Stevens*, 167 Ga. App. at 690 (5); *Crain v. Daniel*, 79 Ga. App. 647, 651-652 (3) (54 SE2d 487) (1949), such an action is not a legal prerequisite to removing a mere intruder from the premises. See *Block v. Brown*, 199 Ga. App. 127, 130 (1) (404 SE2d 288) (1991).

In light of this precedent, the pertinent question in this case is whether, assuming that he was in possession of the upstairs unit on February 18, Steed occupied the status of a tenant at sufferance or an intruder. If the former, the defendants were required to file a dispossessory action and obtain a writ of possession; if the latter, the defendants were not required to follow those specific procedures before locking Steed out of the premises.[3]

"Where former owners of real property *remain* in possession after a foreclosure sale, they become tenants at sufferance." (Emphasis supplied.) *Bellamy v. Fed. Deposit Ins. Corp.*, 236 Ga. App. 747, 750 (1) (512 SE2d 671) (1999). See also *Frank*, 227 Ga. App. at 547 (1) (c); *Cloud*, 214 Ga. App. at 598 (8). But in *Durden v. Clack*, 94 Ga. 278 (21 SE 521) (1894), the Supreme Court of Georgia held that when a former owner yields possession of the property at some point after the sale, but then later reenters the property, he is an intruder. See

---

[3] A landlord who unlawfully ousts an intruder may be held liable for the expulsion and for any damage to the intruder's property. See OCGA § 44-11-30 (prescribing method for ejecting intruders); *Kerlin v. Lane Co.*, 165 Ga. App. 622 (302 SE2d 369) (1983) (on motion for rehearing); *Allison v. Hodo*, 84 Ga. App. 790, 791 (1) (a) (67 SE2d 606) (1951). Notably, however, Steed did not argue in the court below or in this Court that the defendants would be liable even if he was an intruder. Steed therefore has waived that legal argument. See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2), 830 (3) (573 SE2d 389) (2002); *OVIP, Inc. v. Blockbuster Textiles*, 289 Ga. App. 276, 278 (1) (656 SE2d 907) (2008).

also *Baker v. Downing*, 69 Ga. 746 (1882) (when an occupant formally surrenders possession of certain property, but later reenters the property in contravention of the surrender, he is an intruder). Applying these principles, we conclude that if a former owner is not in possession of the property at the time of the foreclosure sale or subsequently goes out of possession, but then later reenters the property aware that a foreclosure sale has already taken place, the former owner is a mere intruder, and the legal title holder is not required to follow the dispossessory procedures set forth in OCGA § 44-7-50 et seq.

Here, it is undisputed that Steed was not in possession of the upstairs unit at the time of the foreclosure sale on February 5, 2008. Rather, under Steed's own version of the facts, he did not come into possession of the upstairs unit until February 13, 2008, when Webster vacated the premises pursuant to the consent judgment that she had entered into with Steed. Nor does Steed dispute that he was aware of the prior foreclosure sale when he regained possession of the upstairs unit. Given this uncontroverted record, Steed was an intruder rather than a tenant at sufferance at the time the locks were changed on the upstairs unit on February 18, 2008.[4] See *Durden*, 94 Ga. at 279; *Baker*, 69 Ga. 746. Compare *Bellamy*, 236 Ga. App. at 750 (1). Accordingly, the defendants were not required to file a dispossessory action and obtain a writ of possession against Steed before changing the locks. See *Block*, 199 Ga. App. at 130 (1). Because Steed's wrongful eviction, trespass, and negligence claims were predicated on his assertion that the defendants acted unlawfully by not obtaining a writ of possession, his claims necessarily failed as a matter of law, and summary judgment in favor of the defendants was appropriate.

(b) Steed next argues that the trial court's summary judgment order should be reversed because the court considered the cash for keys agreement entered into between Webster and Safeguard.[5]

---

[4] Steed argues that under the rule announced in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1) (343 SE2d 680) (1986), he should be treated as a tenant at sufferance based on certain alleged conflicting affidavits of Fannie Mae. Because Steed did not raise this legal argument in his summary judgment filings in the court below and the issue was not ruled upon by the trial court, we decline to consider it. See *Pfeiffer*, 275 Ga. at 829 (2), 830 (3); *OVIP, Inc.*, 289 Ga. App. at 278 (1). Moreover, we have reviewed the affidavits of Fannie Mae and do not believe that they are contradictory, and so *Prophecy* would not apply. See *Ayer v. Norfolk Timber Investment*, 291 Ga. App. 409, 412 (2) (662 SE2d 221) (2008).

[5] Steed further argues that the trial court erred by considering an order entered by the magistrate court in the dispossessory proceedings relating to the downstairs unit. Steed's argument is without merit. The trial court expressly stated in its summary judgment order that the court "[did] not find [the magistrate's] [o]rder to be relevant or probative in this case" and that the court "ha[d] not taken that [o]rder into consideration in any of its rulings in the case *sub judice*."

According to Steed, the agreement was irrelevant, constituted inadmissible hearsay, and should not have been considered by the trial court in deciding whether summary judgment was appropriate. A trial court's decision regarding the admission or exclusion of evidence is reviewed for an abuse of discretion. See *Dept. of Transp. v. Mendel*, 237 Ga. App. 900, 902 (2) (517 SE2d 365) (1999). No such abuse occurred here.

First, "[a]ny evidence is relevant which logically tends to prove or to disprove a material fact which is at issue in the case, and every act or circumstance serving to elucidate or to throw light upon a material issue or issues is relevant." (Citations and punctuation omitted.) *Shelnutt v. Phillips*, 113 Ga. App. 321, 322 (1) (147 SE2d 803) (1966). The cash for keys agreement clearly was relevant because it provided support for the defendants' contention that Webster rather than Steed was in possession of the upstairs unit at the time of the foreclosure sale and for several days thereafter.

Second, the agreement was admissible under the business records exception to the hearsay rule.

> OCGA § 24-3-14 prescribes the statutory standard for the admission in evidence of records made in the regular course of business. This Code section is to be liberally interpreted and applied. OCGA § 24-3-14 (d). . . . Before a writing or record is admissible, under OCGA § 24-3-14 (b), a foundation must be laid through the testimony of a witness who is familiar with the method of keeping the records and who can testify thereto and to facts which show that the entry was made in the regular course of a business at the time of the event or within a reasonable time thereafter.

(Citations, punctuation and emphasis omitted.) *Hertz Corp. v. McCray*, 198 Ga. App. 484, 485 (2) (402 SE2d 298) (1991).

The cash for keys agreement was authenticated in the affidavit of the Safeguard contractor who personally signed the agreement and witnessed Webster sign the agreement. The contractor testified by affidavit that the agreement was one of his own business records that he maintained in the regular course of business. The agreement thus was properly admitted as a business record under OCGA § 24-3-14. See, e.g., *Guardian of Ga. v. Granite Equip. Leasing Corp.*, 130 Ga. App. 514 (1) (203 SE2d 733) (1974) (lease agreement properly admitted as business record). It follows that Steed has failed to establish an abuse of discretion by the trial court in the admission

of the cash for keys agreement.[6]

(c) Steed also maintains that the trial court's summary judgment order should be reversed because the court considered Steed's deposition testimony in deciding whether summary judgment should be granted. Steed claims that although he had reserved the right to read and sign during his deposition, he was never notified that a transcription of his deposition was available for examination so that he could either sign the deposition or submit a signed errata sheet. We find no reversible error.

> If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them.

OCGA § 9-11-30 (e). Absent a waiver by the witness, a deposition is inadmissible unless the officer before whom the deposition was taken notifies the witness that the transcript or recording is available for examination and signature. See *Sherrill v. Martin*, 161 Ga. App. 558, 560 (2) (B) (288 SE2d 648) (1982). Here, Steed testified by affidavit that he was never notified by the officer that his deposition transcript was available for examination and signature, and the defendants offered no testimony or evidence to rebut Steed's affidavit. Consequently, the trial court erred by admitting Steed's deposition for purposes of summary judgment. See id.[7]

Nevertheless, the trial court's admission and consideration of

---

[6] In a separate section of his brief, Steed in one sentence makes the blanket argument that "all affidavits filed by defendants clearly constituted hearsay and/or double hearsay," that all the exhibits attached to every affidavit could not be admitted as business records, and that "some of the exhibits attached to the affidavits were not produced to [him] during discovery." "Pursuant to Court of Appeals Rule 25 (a) (3), an appellant must support enumerations of error with argument and citations of authority, and mere conclusory statements are not the type of meaningful argument contemplated by Rule 25 (a) (3)." (Citation and punctuation omitted.) *Jones v. State*, 289 Ga. App. 219, 221 (1), n. 1 (656 SE2d 556) (2008). See *All Fleet Refinishing v. West Ga. Nat. Bank*, 280 Ga. App. 676, n. 2 (634 SE2d 802) (2006). Accordingly, Steed's blanket assertion of error is deemed abandoned. Id. See Court of Appeals Rule 25 (c) (2).

[7] In *Spector v. Lankford*, 151 Ga. App. 397, 398 (2) (259 SE2d 654) (1979), we held that the admission of a deposition at trial was proper, although it had not been made available to the witness for examination and signature. *Spector*, however, involved a "unique situation" where the deposition in question was taken after the court adjourned for the first day of trial because the witness had an out-of-state business commitment that prevented him from attending trial the next day, and the parties were "well aware that by the time the transcript was prepared the witness would be unavailable to sign it." Id. The present case does not involve a similar unique situation.

Steed's deposition does not require reversal under the circumstances of this case. Steed has not pointed to any facts that came into evidence only through his deposition testimony that affected whether summary judgment should or should not have been granted. Indeed, the pertinent facts contained in Steed's deposition testimony that control the outcome on appeal in this case also came into evidence through Steed's affidavits and the defendants' affidavits. Hence, any error in admitting the deposition was harmless. See *Sherrill*, 161 Ga. App. at 560 (2) (B).

(d) Lastly, Steed argues that the trial court's summary judgment order should be reversed because he was not given an adequate amount of time to respond to the defendants' supplements to their summary judgment motions. We conclude that Steed acquiesced in the trial court's ruling on the supplementation issue and thus has no basis to complain on appeal.

The record reflects that Steed initially objected to the defendants' filing of supplemental motions and affidavits on the grounds that they were untimely and that he was entitled to have an adequate opportunity to respond. Following a hearing, the trial court ordered that Steed would have an additional ten days to respond to the defendants' supplemental filings. Steed thereafter filed an "amended" objection to the supplemental motions and affidavits in which he omitted his former argument that the supplementation was untimely and that he had been given an inadequate amount of time to respond. By doing so, Steed abandoned his former arguments and acquiesced in the trial court's order giving him ten days to respond. A party cannot acquiesce to a ruling and still complain of the same on appeal. See *Old Stone Co. I v. Hughes*, 284 Ga. 259, 262 (3) (663 SE2d 687) (2008).

2. In his second enumeration of error, Steed contends that the trial court erred by granting summary judgment to the defendants on his FBPA and intentional infliction of emotional distress claims relating to the downstairs unit. We do not agree.

(a) The trial court correctly granted summary judgment in favor of the defendants on Steed's claims under the FBPA because Steed failed to present any evidence that he delivered notice "reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered" to the defendants at least 30 days before filing suit, as required by OCGA § 10-1-399 (b).[8] The notice requirements imposed by OCGA § 10-1-399 (b) are a prerequisite to the filing of a

---

[8] OCGA § 10-1-399 (b) provides in part:
At least 30 days prior to the filing of any [action brought under the FBPA], a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be delivered to

FBPA suit. See *Lynas v. Williams*, 216 Ga. App. 434, 435 (3) (a) (454 SE2d 570) (1995).

It is true, as Steed asserts, that the statutory notice requirement does not apply to companies that do not maintain a place of business or keep assets within the state. See OCGA § 10-1-399 (b). Steed, however, came forward with no evidence that Fannie Mae fell within this exception. As to Safeguard, Steed contends that the exception to the notice requirement applies because Safeguard is a Delaware corporation with its principal place of business in Ohio. But the fact that Safeguard is incorporated and has its *principal* place of business in a different state does not mean that Safeguard does not maintain a place of business in Georgia or keep some assets in Georgia. Furthermore, Steed's contention is predicated on uncertified computer printouts from the Secretary of State's website. These unauthenticated computer printouts were inadmissible and could not be relied upon by Steed to support his assertions. See OCGA § 24-7-20; *Standard Bldg. Co. v. Wallen Concept Glazing*, 298 Ga. App. 443, 446 (680 SE2d 527) (2009); *Matson v. Noble Investment Group*, 288 Ga. App. 650, 656 (2) (655 SE2d 275) (2007). Because Steed failed to demonstrate that the notice requirement was inapplicable in this case, his failure to deliver the proper statutory notice to the defendants precluded his FBPA claims, and summary judgment in favor of the defendants was appropriate.

(b) The trial court likewise correctly granted summary judgment to the defendants on Steed's claim for intentional infliction of emotional distress.

> Georgia has long recognized a cause of action for intentional infliction of emotional distress. However, the burden which the plaintiff must meet in order to prevail in this cause of action is a stringent one. To prevail, a plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.

any prospective respondent. . . . The demand requirements of this subsection shall not apply if the prospective respondent does not maintain a place of business or does not keep assets within the state. . . .

(Citations and punctuation omitted.) *Frank v. Fleet Finance, Inc. of Ga.*, 238 Ga. App. 316, 317-318 (518 SE2d 717) (1999).

We conclude that Steed's claim does not rise to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction as a matter of law. Steed predicates his intentional infliction claim on his allegation that following the foreclosure sale, and while the magistrate court's grant of a writ of possession to Fannie Mae was pending on appeal, an unknown person or persons entered the downstairs unit, broke the lock, changed the deadbolt, and walked around the inside of the unit.[9] Steed does not allege that any of his personal property was taken from the downstairs unit, and he conceded that he "suffered no physical or significant pecuniary loss" as a result of the May 29 incident, other than the $20 cost of purchasing a replacement lock set. Moreover, Steed was able to enter the unit despite the change in the deadbolt, and he did not lose possession of the downstairs unit as a result of what occurred. In fact, he continued living there while appealing the grant of the writ of possession. Finally, Steed presented no evidence indicating that the person or persons who entered the unit were anything other than negligent, or had acted with the intent to frighten or intimidate Steed in any manner.

Given these unique circumstances, Steed's intentional infliction claim must fail. The conduct alleged was not "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Citation and punctuation omitted.) *Frank*, 238 Ga. App. at 318. See *Discovery Point Franchising v. Miller*, 234 Ga. App. 68, 73 (4) (505 SE2d 822) (1998) (repeated inspections of plaintiff's business, even if excessive, were not sufficiently outrageous); *Sanders v. Brown*, 178 Ga. App. 447, 449-450 (1) (343 SE2d 722) (1986) (cutting off water to foreclosed property for several hours when former owners still lived there was not sufficiently outrageous). Compare *DeGolyer v. Green Tree Servicing*, 291 Ga. App. 444, 449-450 (4) (662 SE2d 141) (2008) (intentional wrongful foreclosure can form basis of intentional infliction claim). Consequently, the trial court committed no error in granting summary judgment to the defendants on this claim.

---

[9] Steed presented evidence that the deadbolt had been changed, but he was not at home when the alleged incident occurred on May 29, and he did not present any eyewitness testimony concerning what transpired on that day. In contrast, Fannie Mae, Safeguard, and Safeguard's contractor presented affidavits expressly denying that they had entered – or instructed or hired anyone to enter – the downstairs unit on May 29 or any other date. Based on our ruling in Division 2 (b), we need not resolve whether Steed presented sufficient circumstantial evidence to create a genuine issue of material fact over whether it was an agent of Fannie Mae or Safeguard that entered the downstairs unit on May 29, broke the lock, and changed the deadbolt.

3. In his third enumeration of error, Steed contends that the trial court erred in declining to enter a default judgment against Safeguard as a discovery sanction for untimely producing certain company policy manuals in response to a request for production. To impose the harsh sanction of entering a default judgment on liability, a trial court must find, after conducting a hearing, "that the party against whom the sanction is imposed wilfully failed to comply with a prior discovery order." (Footnote omitted.) *American Med. Security Group v. Parker*, 284 Ga. 102, 107 (8) (663 SE2d 697) (2008). See also *Tenet Healthcare Corp. v. Louisiana Forum Corp.*, 273 Ga. 206, 211 (3) (538 SE2d 441) (2000). A trial court's finding as to whether the failure by the party was wilful will not be reversed if there is any evidence to support it. See *Fowler v. Atlanta Napp Deady*, 283 Ga. App. 331, 334 (1) (641 SE2d 573) (2007).

The trial court found that the failure to produce the manuals was simply the result of a mistake by Safeguard's counsel. There was some evidence to support this finding, namely, the affidavit of Safeguard's counsel to that effect. Furthermore, the trial court conducted a hearing related to the motion for default judgment, but there is no hearing transcript included in the record on appeal. In the absence of a transcript, we must presume that the evidence supported the trial court's findings. See *Collier v. D & N Trucking Co.*, 273 Ga. App. 271, 272 (614 SE2d 801) (2005). As such, the trial court was entitled to find that Safeguard did not act wilfully and deny Steed's motion for default judgment on that ground.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED DECEMBER 30, 2009.

Ellery Steed, *pro se.*

Duncan & Adair, George E. Duncan, Jr., Jennifer C. Adair, Morris, Schneider & Prior, Paul G. Wersant, for appellees.