**SECOND DIVISION**
**ANDREWS, P. J.**
**MILLER, P. J. and PETERSON, J.**

**NOTICE: Motions for reconsideration must be**
**_physically received_ in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 4, 2016**

# In the Court of Appeals of Georgia

A15A2135. HEANY et al. v. BENNETT STREET PROPERTIES,   PE-035
    LP

PETERSON, Judge.

David Heany and Thirsty Dog, Inc. brought suit against Bennett Street Properties, L.P., the owner of premises Thirsty Dog formerly occupied, alleging that Bennett Street impermissibly retained certain fixtures and other personal property after Thirsty Dog vacated the premises. They raised claims for conversion, reasonable hire, and fraud. Heany and Thirsty Dog appeal from an order denying their motion for summary judgment and granting Bennett Street's motion for summary judgment. Appellants argue that the trial court erred by concluding that they had lost any right they might have had to the items in question. Because we find genuine disputes of material fact on that point, we affirm the trial court's denial of Thirsty Dog and

Heany's motion for summary judgment but reverse the trial court's grant of summary judgment to Bennett Street.

Bennett Street is the owner of certain premises located at 2110 Peachtree Road in Atlanta ("the Premises"). In 2007, Bennett Street allowed a prior lease for the Premises to be assigned to Anthony LaRocco, who opened a restaurant named Vita. LaRocco then assigned the lease to Vita LLC. Chip Patterson guaranteed the lease.[1] Vita gave Patterson's company, LaSalle Associates LLLP, a security interest in its fixtures and other items located on the Premises, as evidenced by a UCC Financing Statement filed in February 2008. Vita was unsuccessful and closed around the end of 2009.

Heany was an investor in Vita, loaning money to LaRocco for the restaurant. In return, Heany testified, he and LaRocco ultimately agreed that Heany would own Vita's equipment and fixtures. Heany said he understood at the time of that unwritten agreement that LaRocco owned those fixtures, but later learned that they had been assigned to Patterson . Heany testified that "within a day or so" after the April 2011 eviction by Bennett Street, LaSalle "assigned the UCC" for the restaurant's fixtures

---

[1]Bennett Street ultimately sued Patterson on the guaranty; the case settled in 2012, and Patterson is not a party to this action.

to him. A UCC financing statement assigning the security interest in the fixtures from LaSalle to Heany was filed on August 29, 2014.

After Vita closed around the end of 2009, a sports bar named Thirsty Dog opened on the Premises. Heany, who said he had a "corporate filing" for Thirsty Dog, invested additional money in the new restaurant, such that he believed that he owned it. Heany claims that he signed a document assigning Vita's lease for the Premises to Thirsty Dog and points to a document in the record to that effect. Bennett Street accepted rent checks listing Thirsty Dog as the payor, although Bennett Street's managing partner Jack Brown testified that he considered the checks to have come from Vita. Brown acknowledged that he signed a form so that Thirsty Dog could get a liquor license. But Brown denies signing any new lease or assignment of the lease to Thirsty Dog. Bennett Street contends that the purported lease assignment in the record is a forgery.

Thirsty Dog, which struggled as well, closed around the end of 2010. In the fall of 2010, Bennett Street filed a dispossessory action against Vita. On January 13, 2011, a consent order was entered granting Bennett Street possession of the Premises and a $203,178.41 judgment against Vita for past rent and taxes. Thirsty Dog was not listed as a party to that action, but its lawyer signed separately as having consented

3

to the order on behalf of both Vita and Thirsty Dog. The order provided, "Defendant having agreed to vacate the leased premises and deliver possession of same to Plaintiff on or before January 13, 2011, Plaintiff is entitled to a Writ of Possession which shall be issued instanter." Underneath the signature of Thirsty Dog's attorney, a note provided that Thirsty Dog "joins in the execution of this Consent Order to agree to same and to waive any and all claims it may have against Plaintiff."

Meanwhile, Heany was trying to sell Thirsty Dog's assets, with LaRocco acting as his liaison to a broker. They entered into negotiations to sell the assets to By the Glass LLC, of which Frank Ski was the managing member. LaRocco testified by affidavit that from January 2011 through the time of the eviction, Thirsty Dog paid Bennett Street about $47,500 to remain in the property (keeping furniture, fixtures and equipment there) and to continue negotiations with Ski. Bennett Street acknowledges that it agreed to postpone the eviction to allow negotiations to continue, although it says its agreement was with Vita, not Heany or Thirsty Dog, as memorialized in a written agreement signed by Brown on behalf of Bennett Street and LaRocco on behalf of Vita. In his deposition, Heany acknowledged that at least $40,000 of the money paid to Bennett Street in early 2011 came from Ski and was meant to prevent Bennett Street from filing a dispossessory action and allow

4

negotiations with Ski to continue. Characterizing the money as earnest money, Heany said that Ski "paid us, and we paid the rent."

Efforts to sell the restaurant business to By the Glass fell through, and By the Glass's counsel terminated the deal with Thirsty Dog in a March 31, 2011 letter. By the Glass's lawyer demanded the return of $40,000 she characterized as "earnest money," as well as attorneys' fees and costs. Bennett Street entered into its own lease agreement for the Premises with By the Glass in April, selling at least some of the fixtures claimed in this action to By the Glass in an agreement dated April 26, 2011. Bennett Street proceeded with the eviction, which was carried out by the county marshal's office on April 29, 2011. Around the time of the eviction, Brown told Heany and LaRocco they could come back the following week and take additional property that remained on the Premises, such as televisions, but when they returned, Brown refused to let them take everything they wanted, specifically items he says were "bolted down[,] that were attached to the property[,] that I considered ours."[2]

---

[2]Although Brown's testimony suggests a disagreement over what belonged to the landlord and what constituted trade fixtures that could be removed by a tenant, Bennett Street did not move for summary judgment on the basis that the property at issue did not constitute trade fixtures and therefore was not subject to removal by a tenant. Rather, in its summary judgment brief, Bennett Street said it was "undisputed that the property at issue is trade fixtures."

Heany and Thirsty Dog claim that certain property left on the Premises belongs to them. Heany testified that he purchased some of the items before Thirsty Dog opened, while other items were originally purchased by Vita or another entity.

Heany and Thirsty Dog sued Bennett Street to recover damages for the loss of the property. They asserted claims of conversion, reasonable hire, fraud and misrepresentation, punitive damages and attorneys' fees. The conversion and reasonable hire claims were based on the premise that Bennett Street retained or sold the plaintiffs' property, while the fraud and misrepresentation claim was based on the allegation that Bennett Street falsely represented to the plaintiffs on the day of the eviction that they would be able to return to the Premises to remove their property. Both sides moved for summary judgment, and the trial court granted the motion filed by Bennett Street and denied the motion filed by Heany and Thirsty Dog. The trial court ruled that, regardless of whether Heany or Thirsty Dog had any security interest in the trade fixtures in question, they had no right to remove the trade fixtures subsequent to the dispossessory order entered in January 2011. The court ruled that any trade fixtures not removed prior to that time became the property of Bennett Street, which meant that the conversion and reasonable hire claims failed. The court also ruled that the fraud and misrepresentation claim failed because the plaintiffs did

6

not have the right to recover the trade fixtures on the day of the eviction and thus any false misrepresentation by Bennett Street did not cause their loss of possession.

On appeal, Heany and Thirsty Dog contend that the trial court erred by (1) granting summary judgment for Bennett despite a valid lease assignment to Thirsty Dog that was never terminated; (2) holding that Bennett Street was entitled to proceed with the eviction on April 29, 2011, irrespective of any oral agreement to allow Thirsty Dog to remain in the premises through April 2011 in exchange for $47,500; and (3) ruling that Heany and Thirsty Dog lost any right to retake their property after the eviction despite an alleged agreement that the property could be removed the following week. We consider these arguments in terms of the claims made by the Appellants. Although the parties and the trial court frequently have conflated the claims of Thirsty Dog and Heany, the complaint makes clear that their conversion claims are separate and based on different theories, so we will address them separately.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in

the light most favorable to the nonmovant. *Home Builders Ass'n of Savannah, Inc. v. Chatham Cty.*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

1.     Thirsty Dog's Claims for Conversion and Reasonable Hire.

The tort of conversion occurs through "an act of dominion over the personal property of another inconsistent with his rights[.]" *Romano v. Ga. Dept. of Corrections*, 303 Ga. App. 347, 349 (1) (a) (693 SE2d 521) (2010) (citation and punctuation omitted). A claim for reasonable hire is derivative of a claim for conversion. *See Ewaldsen v. Atl. Ins. Brokers, L.L.C.*, 267 Ga. App. 347, 350 (2) (599 SE2d 223) (2004). Thirsty Dog argues that it had a valid assignment from Vita that created a lease between Thirsty Dog and Bennett Street that was never terminated. Based on this alleged lease assignment, Thirsty Dog claims that Bennett Street converted certain trade fixtures that were Thirsty Dog's to remove as a tenant.

"A tenant has no right to impose his subtenancy upon the landlord without his consent." *Block v. Brown*, 199 Ga. App. 127, 128 (1) (404 SE2d 288) (1991). However, "when the landlord treats the lease as assigned, he is estopped from denying the validity of the assignment." *Id.* A landlord's election to accept the subtenant as his own tenant may be express or may be implied from conduct. *Id.* at 129 (1). Whether a landlord has accepted a subtenant as his tenant is generally a

8

question for a jury, although express conduct by the landlord may show as a matter of law that the landlord did not accept the subtenant. *Meadows v. Siegal*, 217 Ga. App. 59, 60-61 (456 SE2d 268) (1995). In addition to evidence that could imply that Bennett Street accepted a lease assignment from Vita to Thirsty Dog, Thirsty Dog points to evidence of an express acceptance, in the form of the written lease assignment bearing the signature of Brown. Brown testified that he never signed such an assignment, and Bennett Street contends the document is a "forgery," but that merely creates a dispute of fact over whether Bennett Street accepted a lease assignment.

Regardless of whether Bennett Street accepted the lease assignment from Vita to Thirsty Dog, however, any lease between Thirsty Dog and Bennett Street was terminated by January 13, 2011, the date of the consent judgment. Thirsty Dog argues that no notice of intent to terminate the lease was sent to Thirsty Dog and it was not named as a defendant to any dispossessory action. *See Virginia Highland Assocs. v. Allen*, 174 Ga. App. 706, 707-708 (1) (330 SE2d 892) (1985) (entity in actual possession of premises is necessary party to dispossessory action against lessees); *May v. Poole*, 174 Ga. App. 224, 227 (3) (329 SE2d 561) (1985) (timely demand for possession is condition precedent to institution of dispossessory proceedings).

9

However, through counsel, Thirsty Dog signed the consent judgment that gave Bennett Street immediate possession of the premises, specifying that it "agree[d] to same." Although the trial court may be correct that the waiver contained in that judgment could not reasonably encompass any claim of Appellants that might arise after the date of that judgment, we agree with the trial court's oral ruling at the close of the summary judgment hearing that it was clear from the consent order "that Thirsty Dog did not have any right to possession of the premises."

> OCGA § 44-7-12 provides:
>
> During the term of his tenancy or any continuation thereof or while he is in possession under the landlord, a tenant may remove trade fixtures erected by him. After the term and his possession are ended, any trade fixtures remaining will be regarded as abandoned for the use of the landlord and will become the landlord's property.

Under that rule, Thirsty Dog lost any right to remove any trade fixtures as of the date of the consent judgment, which gave possession of the premises to Bennett Street.

However, Thirsty Dog has raised a dispute of material fact as to whether subsequent payments to Bennett Street resurrected its rights. Thirsty Dog argues that its payment of $47,500 allowed it to remain in the Premises and that the trial court

10

erred by finding that any such agreement was too vague to be enforced. Bennett Street claims that it never had any agreement with Thirsty Dog to allow it to remain on the Premises, pointing to Heany's deposition testimony that $40,000 of the payments to Bennett Street came from Ski. It is true that Heany testified as much, but he said that Ski "paid us, and we paid the rent." Heany testified that at least one reason for the payments was to allow for additional time to consummate the sale of the restaurant business. Moreover, Heany characterized the money from Ski as earnest money. In keeping with that characterization, when By the Glass's counsel terminated the deal with Thirsty Dog, she demanded the refund of "$40,000 refundable earnest money paid." Bennett Street points to its written agreement with Vita, signed by LaRocco, but an affidavit from LaRocco said that from January 2011 through the time of the eviction, Thirsty Dog paid Bennett Street about $47,500 to remain in the property, keeping furniture, fixtures and equipment there, and continue negotiations with Ski.

All of this creates a genuine dispute of material fact as to whether, in exchange for money from Thirsty Dog, Bennett Street agreed to extend Thirsty Dog's time of possession (and thereby Thirsty Dog's right to the trade fixtures), and for precisely how long. We, therefore, affirm the trial court's denial of Thirsty Dog's motion for summary judgment on its claims for conversion and reasonable hire, as well as any

11

associated claims for punitive damages and attorneys' fees, but reverse the trial court's grant of summary judgment to Bennett Street on those claims.

2.      Heany's Claims for Conversion and Reasonable Hire

Although Thirsty Dog's claim appears to rest on its putative status as a tenant of Bennett Street, Heany's claim is based on his claimed status as a holder of a security interest in certain items. The trial court appears to have conflated the claims of Heany with those of Thirsty Dog, however, ruling that "[t]he issue of whether Plaintiffs had a security interest in the property is a moot point because it has no bearing on whether Plaintiffs had a right to remove the trade fixtures once their term of tenancy was terminated by the Magistrate Court." The trial court assumed that, after entry of the consent judgment in the dispossessory action, LaSalle Associates could not assign any interest in the items to Heany, because LaSalle no longer had a security interest in those items. By that point, the trial court reasoned, the items became the property of Bennett Street.

However, a tenant's abandonment of fixtures pursuant to OCGA § 44-7-12 does not necessarily extinguish someone else's security interest in that property. Pursuant to OCGA § 11-9-334(f)(2), "[a] security interest in fixtures . . . has priority over a conflicting interest of an encumbrancer or owner of the real property if  . . .

12

[t]he debtor has a right to remove the goods as against the encumbrancer or owner." That priority of interest "continues for a reasonable time if the debtor's right to remove the goods as against the encumbrancer or owner terminates." OCGA § 11-9-334(g).

Here, Vita, the debtor within the meaning of OCGA § 11-9-334(f)(2), had a right under OCGA § 44-7-12 to remove any trade fixtures that it erected, at least until "the term of [its] tenancy or any continuation thereof" and its "possession under the landlord" ended. Thus, for some "reasonable" period of time, LaSalle's security interest in the items took priority over whatever interest Bennett Street might have received under OCGA § 44-7-12 when it took possession of the premises. What constitutes such a reasonable time is a question of fact not easily susceptible to resolution on summary judgment. *See, e.g., Bishop v. Valley Holding, Inc.*, 261 Ga. 390, 392 n.4 (2) (404 SE2d 779) (1991) (what constitutes "reasonable time" for performance of contract is a question for the trier of fact). Therefore, we affirm the trial court's denial of Heany's motion for summary judgment on his claims for conversion and reasonable hire, as well as any associated claims for punitive damages and attorneys' fees, but reverse the trial court's grant of summary judgment to Bennett Street on those claims.

13

3.      Fraud Claims

Finally, Heany and Thirsty Dog contend that the trial court erred by ruling that they lost their right to retake their property despite what they characterize as an agreement by Bennett Street that they could have into May 2011 to remove their property. This argument appears to be based on testimony by Brown, Bennett Street's representative, that around the time of the April 29, 2011, eviction he told Heany and LaRocco that they could come back the following week and retrieve the rest of their property. The complaint filed by Heany and Thirsty Dog frames this conversation as the basis for their fraud claims. The trial court concluded that evidence of such a conversation could not provide a basis for the fraud claims because the Heany and Thirsty Dog "did not have the right to recover the trade fixtures … when the eviction took place" and thus "their loss of possession was not the proximate cause of Defendant's act." But, as outlined above, genuine disputes of material fact prevent the Court from concluding at this time that Heany and Thirsty Dog did not have the right to recover the trade fixtures at the time of the eviction. Accordingly, although we affirm the trial court's denial of Heany and Thirsty Dog's motion for summary judgment on their fraud claims and any associated claims for punitive damages and

14

attorneys' fees, we reverse the trial court's ruling grant of summary judgment to Bennett Street on those claims.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Miller, P. J., concur.*